STRAW ET AL., Respondents, v. JENKS, Appellant.

**1. Assignment for Benefit of Creditors, What Constitutes — Chattel Mortgages.**

> Where an insolvent firm gave some of its creditors mortgages on its entire stock in trade, all of the mortgages being executed within a few minutes of each other and their amount far in excess of the value of the goods, and permitted the mortgagors to take immediate possession of the property, *held*, that the transaction constituted an assignment whereby it was sought to prefer creditors and was prohibited by § 2027, C. C., which provides that an insolvent may make an assignment for the benefit of his creditors, " provided  *  *  *  that such assignment shall not be valid if it be upon, or contain any trust or condition by which any creditor is to receive a preference or priority over any other creditor; but in such case the property of the insolvent becomes a trust fund to be administered in equity."

**2. Same — Rights of Creditors.**

> While the execution of the mortgages in such case constituted an invalid assignment, still, their having been given to secure *bona fide* debts, there was no such a fraudulent disposition of the firm's property as would authorize the other creditors to attach it.   The mortgages operated to divest the firm of its title, and the mortgagees held it in trust under the statute for the benefit of all of the creditors.

**3. Same.**

> Where an insolvent makes a general disposition of all of his property and abandons his business, or puts himself in such a position it is impossible to continue the business, he has made a voluntary assignment within the meaning of the statute, and it matters not the character of the instrument or instruments used to effect the object.   The purpose of the statute is to prevent preferences, and it should receive such a construction as will effect that object.

**4. Damages, Measure of — Conversion of Mortgaged Chattels.**

> In an action by a second mortgagee against a sheriff to recover for the conversion of the mortgaged chattels, where the first mortgagee had recovered what was due him on account of the conversion, the second mortgagee's recovery should be limited to the difference between the value of the chattels and the prior recovery where the value is less than the amount of the two mortgages.

(Argued May 27, 1889; determined and opinion filed October 10, 1889.)

APPEAL from the district court, Grand Forks county; Hon. W. B. McConnell, Judge.

Action by mortgagees to recover damages for conversion of mortgaged property. The alleged conversion consisted in defendant, who was sheriff, levying certain warrants of attachment against the mortgagors upon the mortgaged property, which had been taken possession of by the mortgagees. Defense, that the mortgagors were insolvent, and that the mortgage constituted an assignment for the benefit of creditors, and was void, because it preferred the mortgagees, plaintiffs, to the exclusion of other creditors.

*Stone & Sewman, Noyes & Noyes, A. W. Bangs* and *Moses & Newman,* for appellant.

The respondents in any event cannot recover more than the difference between the value of the goods in question, and the judgment obtained against the defendant by the first mortgagee. C. C. 1970; Keith v. Haggart, 33 N. W. Rep. 465.

The mortgage was void for the reason it was a transfer in trust, of the entire property of the firm, who were insolvent, for the benefit of a part of their creditors and amounted to an assignment of all their property in trust, for the benefit of a portion of the creditors. Martin v. Haussman, 14 Fed. Rep. 160; Kellogg v. Richardson, 19 id. 72; Clapp v. Dittman, 21 id. 15; Perry v. Corby, 21 id. 737; Kerbs v. Ewing, 22 id. 693; Clapp v. Nordmeyer, 25 id. 72; Freund v. Yaegerman, 26 id. 812; State v. Moss, 27 id. 262; Weil v. Pollock, 30 id. 813; Crow v. Beardsley, 68 Mo. 435; State v. Benoist, 37 id. 501; Sexton v. Anderson, 95 id. 382; Downing v. Kintzing, 2 S. & R. 326; Van Vleet v. Slawson, 47 Barb. 317; Holt v. Bancroft, 30 Ala. 200; Livermore v. McNair, 34 N. J. Eq. 478; Watson v. Bagaley, 12 Pa. St. 164; Miners' National Bank Appeal, 57 id. 193; Burrows v. Lehndorf, 8 Ia. 96; Cole v. Dealham, 13 id. 551; Van Patten v. Burr, 52 id. 518; Heineman v. Hart, 55 Mich. 64; Harkrader v. Lieby, 4 Ohio St. 602; Dickson v. Rawson, 5 id. 224; Englebert v. Blanjot, 2 Whart. 340; Mussey v. Noyes, 26 Vt. 471; Thompson v. Heffner, 11 Bush, 359; Perry v. Holden, 22 Pick.

269 ; Bonns v. Carter, 20 Neb. 566 ; Danner v. Brewer, 69 Ala. 191 ; Winner v. Hoyt, 66 Wis. 227 ; Page v. Smith, 24 id. 368; Wilks v. Walker, 22 S. C. 108 ;. Fruitt v. Caldwell, 3 Minn. 364 ; Murphy v. Caldwell, 50 Ala. 461 ; Owen v. Aris, 26 N. J. Law, 22 ; Wallace v. Wainright, 87 Pa. St. 263 ; Johnson's Appeal, 103 id. 378 ; Taylor v. Taylor, 78 Ky. 470 ; Gage v. Parry, 69 Ia. 605 ; Burrill, Assignments (4th Ed.), § 128 ; Lewin, ·Trusts, 509 ; Preston v. Spaulding, 120 Ill. 208 ; C. C., § 2027 ; Pen. C., § 637 ; White v. ·Cotzhausen, 9 Sup. Ct. Rep. 309.

The mortgage being void as a general assignment, the assets became a trust fund to be distributed in equity among all the creditors ; but until taken into the actual custody, they were liable to attachment by a creditor, and he could thus obtain a preference. Van Alstyne v. Cook, 25 N. Y. 489 ; Innes v. Lansing, 7 Paige, 583.

*Bosard & Corlis* and *Cy. Wellington*, for respondents. .

If the transaction constituted an assignment it would not avail appellant for it would pass the title, and the property would not be liable to attachment. Fuller v. Hasbrouck, 8 N. W. Rep. 697.

In all the cases in which the courts have held the instrument to be an assignment, the statutes rendered an assignment with preferences absolutely void without declaring that the property became a trust fund, as in Bonns v. Carter, 31 N. W. Rep. 381 ; Winner v. Hoyt, 28 id. 387 ; Wilkes v. Walker, 53 Am. Rep. 706 ; Page v. Smith, 24 Wis. 368. And in those cases in which the preference was declared invalid by the statute, the creditors did not attempt to raise the question by seizing the property and claiming the preference the statute condemned, but by proceeding in equity to have the property declared a trust fund for the benefit of all the creditors. Martin v. Hausman, 14 Fed. Rep. 160 ; Clapp v. Dittman, 21 id. 15 ; Dahlman v. Jacobs, 15 id. 868 ; Clapp v. Nordmeyer, 25 id. 71 ; Woonsocket Co. v. Falley, 30 id. 808 ; Freund v. Yægerman, 26 id. 812 ; Holt v. Bancroft, 30 Ala. 193 ; Preston v. Spalding, 120 Ill. 208, 10 N. E. Rep. 903; Hide & L. Nat'l Bank v. Rehm, 18 N. E. Rep. 788 ; White v. Cotzhausen, 9 Sup. Ct. Rep. 309.

An attaching creditor cannot raise the question. Waterman

v. Silberberg, 2 S. W. Rep. 5; Berry v. O'Connor, 21 N. W. Rep. 840; Campbell v. Colorado C. & I. Co., 10 Pac. Rep. 248; Atherton & Co. v. Ives, 20 Fed. Rep. 894; Burrill, Assignments; § 165.

The mortgage, neither alone, nor in connection with the other mortgages, was an assignment for the benefit of creditors; and it is in such assignments only that a preference is prohibited. With this exception the policy of this territory is in the line of the common law which permits preferences, there being no fraud in the transaction. § 2021. The assignment in which a preference is void is an assignment executed in conformity with that title, and is an assignment under which the assignee is vested with the legal title to the property, and is required to file an inventory, give a bond, and ultimately account for the discharge of his trust. The cases referred to by appellant, when examined in connection with the statutes under which they arose, present nothing counter to this position. The doctrine deduced from the authorities and which accords with the statutes granting the right to prefer generally, but withholding it in the case of a general assignment, is this: When the debtor recognizes hopeless insolvency, and determines to yield to his creditors control of his entire property, he must allow them all to participate equally; the law declares invalid every device by which he would prevent this. But where he hopes to retrieve his position and expects to continue to exercise control over his property, he may, save as against proceedings *in invitum*, exclude all, or as many as he sees fit. The parties did not contemplate the abandonment of the business and property, at least, such was not the intention of the mortgagors. That the chattel mortgages did not constitute an assignment within the meaning of the statute prohibiting preferences, see Aulman v. Aulman, 32 N. W. Rep. 240; Field v. Fisher, id. 838; Gage v. Parry, 29 id. 822; In re Guyer, id. 826; Ingram v. Osborne, 35 id. 304; Noyes v. Schner, id. 310; Davis v. Scott, 34 id. 353; Southern W. L. Co. v. Haas, 33 id. 657; Van Patten v. Thompson, 34 id. 763; Talbott v. Ewlatt, 7 S. W. Rep. 630; Tootle v. Coldwell, 1 Pac. Rep. 329; Waterman v. Silberberg, 2 S. W. Rep. 578; Gilbert v. McCorkle, 11 N. E. Rep. 296; Lamar v. Poole, 2 S. E. Rep. 322; Stix v. Saddler, 9

N. E. Rep. 905 ; Magovern v. Richard, 3 S. E. Rep. 340; Caldwell v. Crittenden, 23 N. W. Rep. 646 ; Campbell v. Colorado C. & I. Co., 10 Pac. Rep. 248 ; Doremus v. O'Hara, 1 Ohio St. 45; Atkinson v. Tomlinson, id. 237; Bates v. Coe, 10 Conn. 280 ; Henshaw v. Sumner, 23 Pick. 442 ; Elgin N. W. Co. v. Meyer, 30 Fed. Rep. 659.

The measure of damages is the full amount due on the mortgage, although in excess of the value of the property after deducting the amount due on the first mortgage. The case of Keith v. Haggart, 33 N. W. Rep. 465, decided by this court, is distinguishable for two reasons: 1. Only a portion of the mortgaged property was seized. 2. The balance that was not seized was more than sufficient to pay the mortgage debt.

SPENCER, J. (*After stating the facts as above.*) This action was brought to recover from the defendant the value of a stock of merchandise alleged to have been by him converted to his own use. The plaintiffs were mortgagees of said property, and in possession thereof at the time of the alleged conversion. The defendant was sheriff, and levied upon such property by virtue of certain writs of attachment to him duly issued against the property of J. K. Johnson & Co., at the suit of certain of their creditors. The mortgage under which plaintiffs claim was executed by said firm of J. K. Johnson & Co. The sufficiency of the attachment proceedings upon their face to justify the sheriff in making levy upon the property of the defendants therein (J. K. Johnson & Co.) is conceded.

In April, 1883, J. K. Johnson and one M. J. Mendelson formed a special partnership for the purpose of conducting a general mercantile business, of which said Johnson was the general, and said Mendelson the special partner. This partnership continued until the following September, when it was dissolved, Mendelson withdrawing from the firm. Thereupon said Johnson and one Harvey Boaz formed a partnership, either general or special, and of which it is claimed that Boaz was special partner, under the firm name of Johnson & Co., and consisting of Johnson and Boaz, and taking the stock of merchandise owned by the former firm of Johnson & Co. at an agreed price of $15,000 ; Boaz paying Men-

delson $10,000 of this sum, and contributing that amount in the goods thus obtained from Mendelson's interest in the original firm, as his part of the capital in the new firm, as the agreement was, and the new firm of J. K. Johnson & Co. giving Mendelson their notes for the residue of his interest in the old firm. The new firm (Johnson and Boaz), under the same name as the old firm, continued the same business, at the same place, with practically the same stock of merchandise, until November 12, 1883. On that day the firm of J. K. Johnson & Co. executed several chattel mortgages, each on all the goods and merchandise of said firm, including the fixtures and furniture in their store, in the aggregate for the sum of $37,678.70, to several of the creditors of said firm; the first of which was for $10,373.46, to the Citizens' National Bank of Grand Forks; the next for $16,718.19, to the plaintiffs herein; and the third, to certain other creditors, for $10,587.05. These mortgages were executed in the order named, a few moments' time only intervening between the execution of each, at a very late hour of the night of November 12, 1883. All of the mortgaged property was taken possession of by an agent of the several mortgagees, without objection on the part of the mortgagors, and on the same day they commenced the sale of such property with the consent of the mortgagors, and continued selling such goods at private sale under said mortgages for several days, when the remaining portion of such property was levied upon and taken possession of under an attachment issued against the property of the mortgagors in favor of certain of their creditors not secured by said mortgages. Such levy by the defendant upon said property under said attachments constituted the alleged conversion in this action. On the trial the plaintiffs recovered judgment for the amount of their mortgage debt and interest.

It is claimed by the appellant that the several mortgages executed by the firm of J. K. Johnson & Co. constituted an assignment for the benefit of creditors, under section 4660 of the Compiled Laws of this territory, and that such assignment is void because of preferences, and hence that said mortgaged property was subject to attachment at the suit of other creditors of said firm.

What interest or title to the property in question did the plaintiffs acquire under the chattel mortgage executed to them?

In considering this question we shall assume, for the purposes of this case, that the mortgages were properly executed and filed after having been witnessed in proper form. Concededly, the mortgages were executed to secure the payment of actual *bona fide* indebtedness in favor of the plaintiffs, and to each of the parties to whom they were given. The plaintiffs were actually in possession of the property at the time the defendant levied the attachments complained of, and this by the consent and with the knowledge of the mortgagors. The mortgagors had the right legally to execute the mortgage for the purpose of securing the payment of the debt thereby intended to be secured. These propositions are evident, and not disputed. But at this point other considerations enter into the case. By section 4660 of the Compiled Laws of Dakota it is provided : " An insolvent debtor may, in good faith, execute an assignment of property to one or more assignees in trust, toward the satisfaction of his creditors, in conformity to the provisions of this title ; subject, however, to the provisions of this Code relative to trusts, and fraudulent transfers, and to the restrictions imposed by law upon assignments by special partnerships, by corporations, or by other specified classes of persons ; provided, moreover, that such assignment shall not be valid if it be upon or contain any trust or condition by which any creditor is to receive a preference or priority over any other creditor, but in such case the property of the insolvent shall become a trust fund, to be administered in equity in the district court, and shall inure to the benefit of all the creditors in proportion to their respective claims and demands."

We think the evidence shows conclusively that the mortgagors were, at the time of the execution of these several mortgages, insolvent, and unable to pay their obligations as they matured, and that by means of these mortgages they transferred, when they also surrendered possession of the property therein mentioned, as they did immediately upon the execution of the mortgages, substantially all of their property and effects. The aggregate of the amount of the mortgages executed by them was greatly in excess of the value of all their property.

Johnson, the general partner of the firm, testifies that the property mortgaged was not worth to exceed $30,000, and that it was

all the property owned by the firm. The mortgages are shown to have exceeded $37,000, and there' was other indebtedness, amounting, in the aggregate, to a large sum.

It is evident that, at the time of the execution of these mortgages, the members of the firm which executed them — the general partner, at all events — knew that the firm was hopelessly insolvent, and that there was no prospect or intention of resuming the business; that it was impractical and impossible to do so. So slight was the hope that the business could be continued by the firm that immediately the very next act that was done after the execution of the mortgages was to permit, if not to deliver, possession of the entire property to pass to the mortgagees, who began selling the goods, with the consent of the mortgagors, at the opening of the store in the morning following the night of the execution of these transfers. It is equally apparent that it was the intention of these mortgagors to give to these plaintiffs and others to whom these mortgages were given a preference over all other creditors. It cannot be successfully disputed that the execution of these mortgages was in pursuance of a scheme to appropriate the entire assets of this firm to the persons and firms obtaining the mortgages, to the exclusion of the other creditors of the firm, and that this method was adopted so as to escape the effect of a formal assignment containing such preferences. This was doubtless the design of all parties to these instruments.

The purpose of the section of the Compiled Laws before quoted is manifest. It is to make equal distribution of the assets of an insolvent debtor, who shall voluntarily assign all his property among his creditors according to their several debts. It renders an assignment containing preferences invalid, and, notwithstanding such preferences, gives to every creditor the absolute right to share ratably in the distribution of the assets of the insolvent. Its design is to prevent preferences among creditors at the mere caprice of the insolvent. It is remedial in its nature, and must be construed liberally, and so as to accomplish the purposes for which it was enacted. Insolvent debtors must not be permitted to evade its provisions merely by adopting the forms of other legal instruments, whether judgment by confession or mortgages, or by calling the instrument by which the transfer of all his prop-

erty is effected to creditors of his choice, to the exclusion of others of them, something — any thing — less or different than an as-signment.    Under this statute, whenever an insolvent debtor makes a general disposition of all his property and effects, whether to all or only a part of his creditors, thereby abandoning his busi-ness, or putting himself in such situation that it is impossible for him to continue in it, he has made a voluntary assignment ; and this, whether the instrument by which the operation is effected be by means of an instrument usually denominated an " assign-ment," or by mortgage or confession of judgment, or by several of either or both.    So long as the instrument employed by the debtor, whatever it be called, works an absolute transfer of sub-stantially all the property and effects of the insolvent from him to another or others with a design on his part that it shall do so, and that his connection with the business shall cease, it is a vol-untary assignment on his part under the statute in question. Harkrader v. Leiby, 4 Ohio St. 602.    In that case the defendant, Leiby, was insolvent, and executed a mortgage upon the greater portion of his property — substantially all of it — with the in-tent to prefer certain of his creditors.    The statute of Ohio pro-vides that " an assignment of property in trust, which shall be made by debtors to trustees in contemplation of insolvency, with a design to prefer one or more creditors to the exclusion of others, shall be held to inure to the benefit of all the creditors in propor-tion to their respective demands."    It was contended that under this statute the mortgage could not be held to be an assignment ; that it merely created a lien upon the property mortgaged, and was not a conveyance of it ; and that the mortgagee was not a trustee for creditors.    The court, in its opinion in the case, said : " To bring a case within the operation of the law there must be a transfer or conveyance of property, or some valuable interest belonging to the insolvent debtor, in view of his insolvency, to be held by the person taking it, for the benefit of some one or more of the creditors of the debtor other than himself.    But we are clearly of opinion that an assignment, by way of mortgage, may affect such transfer ; and in such case the mortgagee becomes a trustee for such creditor or creditors."    And again they say: " We are not construing a penal statute.    This statute is of the most

beneficial character, and the uniform language of the court has been that it ought to receive a most liberal construction. It promotes justice and equity, by compelling an equal distribution of the effects of an insolvent debtor among those equally entitled; * * * that it allows the debtor to use his property for the payment or security of any of his debts. But as soon as he attempts to create a trust with a preference for any of his creditors, by surrendering any of his property, the statute steps in and declares it a trust for all; that when he puts his property beyond his power for such purpose the law deprives him of all ability to direct or control its distribution. The statute was passed to furnish the remedy, and should be so construed as to make it effectual. This can only be done by looking at its spirit and purpose, and holding cases falling within the mischief intended to be remedied to be within the act." The decision was approved in Dickson v. Rawson, 5 Ohio St. 224.

Decisions to the same effect have been made by the courts of many of the states. Thus, in Burrows v. Lehndorff, 8 Ia. 96, the court construed a section of the Iowa Code which provides that no general assignment of an insolvent, or in contemplation of insolvency for the benefit of creditors of the assignor, shall be valid, unless it be made for the benefit of all his creditors in proportion to their respective claims. The defendant in that case, being insolvent, executed in the course of two days five chattel mortgages and a deed of trust for the purpose of securing some of his creditors, but not all of them. The court held that these instruments, though executed upon different days and to different parties, constituted an assignment by which some creditors were preferred to the exclusion of others; that it was invalid. See, also, Lampson v. Arnold, 19 Ia. 479.

In Winner v. Hoyt, 66 Wis. 227, 28 N. W. Rep. 380, several chattel mortgages were made and assignments of accounts by the various debtors. There was, however, no formal assignment. The court held that these instruments, construed together, constituted one paper, using this language: "The mere fact that the transfer was effected by eleven different instruments, instead of one, did not prevent the transaction from being in substance and effect an assignment. It is not so much the form as the effect

which is to be considered. * * * If we look to the substance and purpose of the whole transaction, instead of mere forms, there seems to be no escape from the conclusion that it was in legal effect a voluntary assignment or transfer of all the property of the debtors for the benefit of the particular creditors named; hence was a preference. Such being the substance of the transaction, it was in direct violation of the statute."

The statute of Kentucky, upon this subject of insolvents making assignments, is somewhat different from that of this territory, but it is intended for the same purpose. And it was held in Thompson v. Heffner, 11 Bush, 359, that "if the facts are such as to show that, at the time of making a mortgage preferring one creditor over another, the debtor must have known he was insolvent, it will be within the statute."

In Illinois it is provided, by section 13 of the voluntary assignment act of that state, that "every provision in any assignment hereafter made in this state providing for the payment of one debt or liability in preference to another, shall be void, and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof." The supreme court of that state, in Preston v. Spaulding, 120 Ill. 208, 10 N. E. Rep. 903, had occasion to construe this statute with reference to the effect of certain transfers of property made by an insolvent debtor, but not by formal assignment, by which certain of his creditors were preferred, and in doing so employed the following language: "When he [the debtor] reaches the point where he is ready and determines to yield the dominion of his property, and makes an assignment for the benefit of his creditors, under the statute, this act declares that the effect of such assignment shall be the surrender and conveyance of all his estate, not exempt by law, to his assignee, rendering void all preferences, and bringing about the distribution of his estate equally among his *bona fide* creditors. And we hold that it is within the spirit and intent of the statute that when the debtor has formed a determination to voluntarily dispose of his whole estate, and has entered upon that determination, it is immaterial into how many parts the performance or execution of his determination may be broken. The law will regard all his acts having for their object and effect the disposition

of his estate as parts of a single transaction, and on the execution of the formal assignment it will, under the statute, draw to it, and the law will regard as embraced within its provisions, all prior acts of the debtor having for their object and purpose the voluntary transfer or disposition of his estate to or for creditors; and if any preferences are shown to have been made or given by the debtor, or to one creditor over another, in such disposition of his estate, full effect will be given the assignment, and such preferences will, in a court of equity, be declared void, and set aside as in fraud of the statute."

By a statute of the state of Missouri, it is provided that "every voluntary assignment of lands, tenements, goods, chattels, effects, and credits, made by a debtor to any person in trust for his creditors, shall be for the benefit of all the creditors of the assignor, in proportion to their respective claims; and every such assignment shall be proved or acknowledged and certified and recorded in the same manner as is prescribed by law in cases wherein real estate is conveyed." Rev. St. Mo., § 354. The court, in considering the effect of this statute in a case where the insolvent debtor had mortgaged all of his property to secure a part of his creditors, and surrendered the property so mortgaged to them, said: "Under this provision of law, a merchant may give a mortgage or a deed of trust in part or all of his property to secure one or more of his creditors, thus preferring them; but he cannot convey the whole of his property to one or more creditors, and stop doing business. Such turning over and virtually declaring insolvency brings the instrument or act by which it is done within the assignment law of Missouri, which requires a distribution of the property of the failing debtor for the benefit of all the creditors in proportion to their respective claims." Kellog v. Richardson, 19 Fed. Rep. 70. This construction was approved by Mr. Justice MILLER in Perry v. Corby, 21 Fed. Rep. 737; and in Kerbs v. Ewing, 22 Fed. Rep. 693, Judge McCRARY, speaking in reference to the same statute, says: "No matter what the form of the instrument, where a debtor, being insolvent, conveys all his property to a third party to pay one or more creditors, to the exclusion of others, such a conveyance would be construed to be an assignment for the benefit of all the creditors."

The supreme court of the United States has recently had occasion to consider the effect of the execution by an insolvent debtor of various instruments upon different days and to different persons, and by which they were preferred to other creditors, with reference to the Illinois statute before cited. In that case (White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. Rep. 309) Judge HARLAN, delivering the opinion of the court, says: " We agree with the supreme court of Illinois that this statute, being remedial in its character, must be liberally construed ; that is, construed ' largely and beneficially, so as to suppress the mischief and advance the remedy.' * * * If, then, we avoid overstrict construction, and regard substance rather than form, if effect be given to this legislation, as against mere devices that will defeat the object of its enactment, the several writings executed by Alexander White, Jr., all about the same time, to his mother, sisters and brother, whereby, in contemplation of his bankruptcy, and according to a plan previously formed, he surrendered his entire estate for their benefit, to the exclusion of all other creditors, must be deemed a single instrument, expressing the purposes of the parties in consummating one transaction, and operating as an assignment or transfer under which the appellee Cotzhausen, may claim equality of right with the creditors so preferred. It is true there was not here, as in Preston v. Spaulding, a formal deed of assignment by the debtor under the statute ; but of what avail will the statute be in securing equality among the creditors of a debtor who, being insolvent, has determined to yield the dominion of his entire estate, and surrender it for the benefit of creditors, if some of them can be preferred by the simple device of not making a formal assignment, and permitting them under the cover or by means of conveyances, bills of sale, or written transfers, to take his whole estate on account of their respective debts, to the exclusion of other creditors ? If Alexander White, Jr., intending to surrender all his property for the benefit of his creditors and to stop business, had excepted from the conveyances, bill of sale, and transfers executed to his mother, sisters and brother a relatively small amount of property, and had shortly thereafter made a general assignment under the statute, it could not be doubted, under the decision in Preston v. Spaulding, and in view of the facts here disclosed, that

such conveyances, bill of sale, and transfers would have been held void as giving forbidden preferences to particular creditors, and his assignment would have been held, at the suit of other creditors, to embrace, not simply the property owned by him when it was made, but all that he previously conveyed, sold, and transferred to his mother, sisters and brother. But can he, having the intention to quit business and surrender his entire estate to creditors, be permitted to defeat any such result by simply omitting to make a formal assignment, and by including the whole of his property in conveyances, bills of sale, and transfers to the particular creditors whom he desires to prefer? Shall a failing debtor be allowed to employ indirect means to accomplish that which the law prohibits to be done directly? These questions must be answered in the negative. They could not be answered otherwise without suggesting an easy mode by which the entire object of this legislation may be defeated."

It is true that none of the statutes referred to are precisely like the one we are called upon to construe in this case. But their spirit and purpose are similar. It is evident that the object of this act is to prevent an insolvent debtor, by any form of instrument, from conveying or transferring all, or practically all, of his property to one or more of his creditors to the exclusion of all others. Any other construction would render the statute futile, and enable such a debtor, by the merest evasion, to accomplish an object forbidden by law.

What possible difference can it make what the form of the instrument is, if it be effectual to transfer the property and create the fund? Of what avail is the statute if an insolvent debtor, notwithstanding its provisions against preferences in assignments, may, by means of a mortgage or a confessed judgment, secure to one or more of his creditors all of their indebtedness against him, and leave the others entirely unprovided for? The object of the statute was to prevent and defeat preferences, and it must be so construed as to accomplish its purpose. It is unreasonable and absurd to suppose that the legislature, when it enacted that there should be no preferences in assignments of insolvent debtors, yet left it easy and convenient for such persons to accomplish the same object by designating the instrument by which it was accomplished

by another name. Such a construction would, in effect, nullify the statute, and render it nugatory and meaningless. This construction of the statute works no hardship upon any class of creditors or the debtor himself. The latter may still, under section 4654 of the Compiled Laws, pay or secure the claim of one creditor in preference to another, and, though financially embarrassed, may sell and transfer property for the payment in good faith of his obligations. Field v. Geohegan, 125 Ill. 70, 16 N. E. Rep. 912; White v. Cotzhausen, *supra*. But he cannot, when insolvent and on the brink of bankruptcy, knowing that he must abandon his business and surrender his property to his creditors for their benefit, by any device or make-shift, transfer all his effects to one or several of them, to the exclusion of all others. Under such circumstances his assignment, if he make one, by whatever form of instrument, is for the benefit of all his creditors equally, in proportion to their demands against him.

This view of the effect of this statute upon the several mortgages in question under which the plaintiffs claim does not, however, necessitate a reversal of the judgment appealed from. It will be observed that, while the statute of this territory before referred to, provides that assignments containing preferences shall not be valid, it does not make them absolutely invalid for every purpose. The mortgages themselves do not indicate that there are any other creditors, and it has only been demonstrated that there are others by proof independent of them. It will be further observed that by this statute it is also provided that, if such assignment be upon or contain any contract or condition by which any creditor is to receive a preference or priority over any other creditor, the property of the insolvent shall become a trust fund, to be administered in equity in the district court, and shall inure to all of the creditors in proportion to their respective claims or demands. Under this provision of the statute, while the mortgages under which the plaintiffs claim must be considered as an assignment by the mortgagors, in view of all the facts in this case, and invalid as an assignment because of the preference secured by it, yet it was sufficient, when accompanied by the delivery of possession of the property, to pass the title from the mortgagors, and vest it in the plaintiffs and their co-mortgagees as a trust fund, of

which they became trustees for the benefit of all the creditors of the assignors. As such trustees they have the right to maintain this action against the defendant, and to hold the property until an assignee or receiver shall be appointed by the district court to take charge and administer the fund under its direction.

The mortgages are valid instruments as such, as between the parties, and were based upon adequate consideration. For the reasons that the mortgagors were insolvent at the time of the execution of the mortgages, and by that means conveyed and transferred substantially all their property, they were held under the assignment law of this territory to constitute an assignment. The law does not tolerate preferences in such instruments, and declares them invalid. But it does not effect a reconveyance of the property to the assignor. On the contrary, the assignor, by the execution of the instruments of assignment, has divested himself of his property, and has placed it beyond his ability to direct or control it in any way. If it contain or provide for preferences, to that extent it is invalid; but it is still valid as an assignment of his property, and by operation of law the property so assigned becomes a fund in equity, discharged from the preferences created by the assignment, which is to be distributed ratably among the creditors of the insolvent. In other words, under section 4660 of the Compiled Laws of Dakota, an assignment by an insolvent debtor containing preferences is valid as an assignment of his property, though invalid as to the preferences contained in or secured by it, and operates to divest the assignor of the title to his property, and creates a fund in equity in which all his creditors are entitled to share equally in proportion to their respective claims. And the person or persons to whom such assignment is made, whatever its form, became trustees of the fund for the benefit of all the creditors; and the fund is to be administered under the direction of the court, and is to all intents and purposes in the custody of the law. The statute declaring such preferences void was not enacted for the purpose of enabling other creditors to gain a preference by attachment proceedings or otherwise against the assignor. On the contrary, its purpose was to prevent preferences, and compel an equal distribution of the assets of the debtor. The attaching creditors are in no better situation than the mortgagees. The

mortgages were given to secure debts honestly owing by the insolvents and without fraud. They are not void as mortgages, but as constituting, when considered together, in view of the facts surrounding their execution, an assignment containing preferences, by an insolvent debtor, of all his property. The very instant such an assignment was executed, the property of the debtor became a fund in equity for payment ratably of the claims of all the creditors, and the fund now so remains in the hands of the mortgagees as trustees for such purpose.

The facts of the case do not bring it within any of the provisions of the Code of Civil Procedure allowing attachments against debtor's property, when considered with reference to those statutes. The property attached was no longer the property of the debtor; it had not been disposed of to hinder, delay or defraud his creditors, within the purview of the law in regard to attachments, and when they may issue, but, on the contrary, in payment of liabilities honestly owing by him. The acts of the insolvent in making the mortgages only became illegal when it was established that, being insolvent, they had conveyed all their property to some of their creditors to the exclusion of others, and then only when considered in the light of the statute in regard to preferences in assignments made by insolvent debtors. As mortgages, they were valid as between the parties. As an assignment, they were invalid as to the preferences secured, but valid to divest the title of the assignors in the property, and vest it in the assignees for the benefit of all the creditors, relieved from the preferences. The provisions of the statute became an element of the contract, which is to be considered and given effect.

To permit the defendant to gain a preference by his attachment in this case would be to pervert both the statute in regard to when attachments may issue in this territory, and that forbidding preferences by insolvent debtors, to purposes for which neither of them were intended or designed. Such a construction would absolutely defeat the intention of the legislature in enacting the proviso contained in section 4660 of the Compiled Laws, and, instead of creating from the property of the insolvent a fund to be administered in equity for the benefit of all the creditors of any insolvent, enable some who might be more conveniently located

for the purpose than others, or by the consent of the insolvent, to obtain preferences by attachment proceedings, and thus accomplish the very mischief this statute was intended to prevent.

The property became a trust fund in equity the moment the assignment was executed and delivered, and the defendant obtained no lien by levying his attachment. The property was at that time *in custodia legis*, and not the subject of attachment by creditors of the insolvent. The title had passed as absolutely from the assignor as though he had made a formal assignment without preferences. Under the statute they had in effect made an assignment of all their property for the benefit of their creditors without preferences. Such an assignment is not ground for attachment. Place v. Miller, 6 Abb. Pr. (N. S.) 178; Ebner v. Bradford, 3 id. 248. And as the same reasons apply whether the partnership be considered general or special, and an attachment under the facts and circumstances of this case will not lie under either conclusion, we express no opinion on that question.

Damages. Upon the question of damages, we think the trial court adopted an erroneous measure. By section 4603, Comp. Laws, it is provided that the detriment caused by wrongful conversion of personal property is presumed to be (1) the value of the property at the time of the conversion, with interest from that time; (2) where the action has been prosecuted with diligence, the highest market value of the property at any time between the conversion and the verdict, without interest. They could have adopted either of these rules. They did adopt the former, and the court has found, as a fact, what the value of the property was at the time of the conversion; that it was $22,260.33, subject, however, to a mortgage in favor of the Citizens' National Bank of Grand Forks of $10,567.58, upon which they have realized, leaving, as the sum to which the plaintiffs would be entitled, $11,692.75. We are of opinion that this is the proper measure of damages to be applied in this case. It was so decided in Keith v. Haggart, 33 N. W. Rep. 465.

From these considerations it follows that the judgment in this action must be modified so as to limit the amount of the recovery to the sum of $11,692.75, that being the value of the mortgaged goods converted, as found by the trial court, after deducting the

amount due upon a prior mortgage, upon which, as appears by the record herein, an action has been brought and recovery had; and as thus modified said judgment must be affirmed, without prejudice, however, to any of the creditors of the firm of J. K. Johnson & Co. to take such proceeding in the district court as they may be advised to have the property in the hands of the plaintiffs declared a trust fund, in which all of such creditors may share ratably, in accordance with the views heretofore expressed. All of the justices concurring, excepting McCONNELL, J., not sitting.