SANDWICH MANUFACTURING CO. *et al.* v. MAX *et al*

1. At common law a debtor may use any.or all his property to pay one or more creditors in preference to others, and in this state the same right is expressly declared by statute. Comp. Laws, § 4654.

2. The right of a debtor to pay one or more creditors in preference to others, and the right to make a general assignment for the benefit of all his creditors ratably, are distinct and independent rights.

3. The statute regulating and permitting voluntary assignments by insolvent debtors for the benefit of creditors was not intended to and does not affect or qualify the right of such debtors to make preferences among their creditors.

4. When a conveyance of property is made in good faith directly to a creditor in absolute executed payment of a debt, the transaction lacks the essential elements of a trust, and cannot be brought within the range of such assignment law.

5. An insolvent debtor may use his property to pay preferred creditors, or he may make a general assignment, as he chooses.

6. If, however, he attempt to use the law permitting and regulating general assignments for the benefit of all creditors, he must in good faith do what such law contemplates, and what he professes to do, and in such case he can make no preferences.

7. It is only when a debtor indicates his intention of taking advantage of the law permitting and regulating general assignments, and putting his property under its protection, that he is denied the right to make preferences among his creditors.

8. The doctrines of the opinion in Straw v. Jenks, 43 N. W. 941, 6 Dak. 414, disapproved.

(Syllabus by the Court. Opinion filed March 3, 1894.)

Appeal from circuit court, Bon Homme county. Hon. E. G. SMITH, Judge.

Action for the purpose of declaring a deed and bill of sale an assignment for the benefit of creditors. From a judgment sustaining the demurrer to the complaint, plaintiffs appeal. Affirmed.

The facts are stated in the opinion.

*J. D. Elliott, D. C. Shull* and *F. D. Wicks,* for appellants.

The transfer of substantially all the property of an insolvent debtor while insolvent, with intent to abandon business to some of his creditors to the exclusion of others, creates a trust for the benefit of all his creditors. The plaintiffs, though simply contract creditors, were beneficiaries of that trust, and can enforce the same in equity without first exhausting their remedies at law or reducing their claim to judgment. Day v. Washburn, 24 How. 352; Clapp v. Dittman, 21 Fed. 75; Case v. Beauregard, 101 U. S. 688; Brisay v. Hogan, 53 Me. 54; Concelier v. Ford, 4 Minn. Miller v. Davidson, 4 Gil. 518; Straw v. Jenks, 43 N. W. 941; Field v. Geohegan, 125 Ill. 70.

The territorial supreme court in the case of Straw v. Jenks, 43 N. W. 941, correctly and properly construed Sections 4654 and 4660 of the Comp. Laws. The case at bar comes directly within the rule of that case and should be decided accordingly under the doctrine of *stare decisis.* Wyman v. Mathews and Bank 53 Fed.; White v. Cotzhausen, 129 U. S. 329; Clapp v. Dittman, 21 Fed. 15; Perry v. Corby, 21 Fed. 737; Kerbs v. Ewing, 22 Fed. 693; Burrill on Assignment, Sec. 162; Van Patten v. Burr 56 Ia. 518; Riggs v. Murray, 2 Johns. Ch. 565; Gere v. Murray, 6 Minn. 305; Albert v. Winn, 7 Gill. 446; Bump on Fraud. Con., p. 392.

*French & Orvis,* for respondents.

An insolvent debtor may transfer substantially all his property with the intention of abandoning his business to one or more of his creditors to pay bona fide debts. Bank v. North, 51 N. W. 96; Farwell v. Nilsson, 24 Ill. 74; Burrill on Assignments, Sec. 2; Weiner v. Davis, 18 Pa. 333; Bishop Insolv. Sec. 130; Dickson v. Rawson, 5 Ohio St. 222; Burrill on Assign-

ments, Sec. 3; Ingram v. Osborn, 35 N. W. 304; Fecheimer v. Robertson, 13 S. W. 423; Cribb v. Hibbard, 46 N. W. 168; Hoey v. Pierron, 30 N. W. 692; Green & Button Co. v. Marshall, 39 N. W. 767; Landauer v. Victor, 34 N. W. 229; Menzesheimer v. Kennelly, 44 N. W. 508; Stevens v. Breen, 44 N. W. 645; Michaelstetter v. Weiner, 52 N. W. 435; Harkrader v. Leiby, 4 Ohio St. 602; Weber v. Mick, 23 N. E. 646; Schroder v. Walsh, 11 N. E. 70; Sheldon v. Mann, 48 N. W. 573; Bresson v. Musselman, 49 N W. 39; Rollins v. Van Baalen, 23 N. W 333; Neuman v. Mining Co., 23 N. W. 606; Dwight v. Lumber Co. 35 N. W. 96; Lampson v. Arnold, 19 Ia. 485; Farwell v. Cunningham, 52 N. W. 1126; Farwell v. Jones, 19 N. W. 241; Perry v. Vezina, 18 N. W. 657; Bank v. Crittenden, 23 N. W. 646; Kohn v. Clement, 12 N. W. 550; Gage v. Parry, 29 N. W. 29 N. W. 822; Hamilton v. Isaac, 52 N. W. 279.

KELLAM, J.   We think the following statement at the head of appellants' brief is a fair presentation of the facts in this case, and we adopt it as the basis of this opinion:  "On or about April 15, A. D. 1892, defendants Max & Baisch were a copartnership engaged in the retail hardware business and the selling of farm machinery at Scotland, this state.   Their stock of goods, book accounts, and all their other property in which they had a valuable interest or any substantial equity as a partnership or individuals were of the nominal value of ten ($10,-000) thousand dollars, the cash value of which was $7,000 to $8,000.   Their indebtedness exceeded fifteen thousand ($15,000) dollars.   Among their creditors were the respondents Solomon and J. C. Wenzlaff, of Yankton, this state, to whom they owed seven thousand ($7,000) dollars.   The said Wenzlaffs knew that Max & Baisch were hopelessly insolvent on or about said last named date.   The said Max & Baisch, knowing that they could not continue their business longer, and that they must abandon the same, executed a bill of sale and deed of their said stock and book accounts, and all their other property in which they

had any substantial interest or equity, either as a partnership
or individuals. to the respondents Wenzlaff, in payment of their
indebtedness of seven thousand ($7,000) dollars.   Immediately
on the delivery of said bill of sale and deed, the said Wenzlaffs
took possession of all the property so transferred, and have
continued to operate the store and run the same in their own
names since.   Said transfer of Max & Baisch left them without
any property or means with which to satisfy or pay their in-
debtedness to any of their other creditors.   This action was in
stituted by the plaintiffs, for themselves and all other creditors
of Max & Blaisch, for the purpose of having said deed and bill
of sale and transfer declared an assignment with intent to give
said Wenzlaffs preference in the collection of their debts over
the other creditors of Max & Baisch, and that it created a trust
for the benefit of all the creditors of said Max & Baisch, under
the provisions of Section 4660 of the Compiled Laws of the
state of South Dakota.   No appearance was entered for Max &
Baisch, but their codefendants, vendees of said property, filed
a general demurrer to the complaint herein, setting up that the
complaint does not state facts sufficient to constitute a cause of
action against them.   The demurrer was submitted to the court
and the same sustained.''   The plaintiffs appealed.

From this statement we draw the following facts:   Max &
Baisch were justly indebted to the Wenzlaffs in the sum of
$7,000. In payment of such indebtedness they conveyed to them
property whose cash value was $7,000 to  8,000.   The property
so conveyed constituted substantially their entire means, and
resulted, as they knew it would, in the dissolution and discon-
tinuance of their business.   The Wenzlaffs knew that such con-
veyance and payment to them took and absorbed substantially
all the property of Max & Baisch, and that it would necessitate
the abandonment of their business.   Max & Baisch were at the
time largely indebted to other creditors, including the plaintiffs
in this action, who were left, by such conveyance and payment
to the Wenzlaffs, entirely unprovided for.   The question to be

determined is directly this: Is it the legal effect of these facts to
make such conveyance to the Wenzlaffs an assignment by Max
& Baisch for the benefit of their creditors? At common law, a
debtor in failing circumstances may use any or all of his prop-
erty to pay one or more creditors in preference to others.
2 Kent, Comm. 532; Burrill, Assignm., § 160. In this state this
right of the debtor is expressly declared by statute. "A debtor
may pay one creditor in preference to another, or may give one
creditor security for the payment of his demand in preference
to another." Comp. Laws, § 4654. This provision simply cod-
ifies the common law, and, unless qualified by other statutory
provisions, the right of a debtor to select and prefer one credi-
tor to another remains as at common law. And it is
very clear that Max & Baisch, in making such payment to the
Wenzlaffs, were exercising a right recognized and assured to
them both by the common and statutory laws, unless such right
has been limited or restrained by other provisions of the stat-
ute; and this is what is claimed by appellants is done by the
statute regulating assignments in trust by insolvent debtors for
the benefit of their creditors. Section 4660, Comp. Laws, is as
follows: "An insolvent debtor may, in good faith, execute an
assignment of property to one or more assignees, in trust to-
wards the satisfaction of his creditors, in conformity to the
provisions of this title; subject, however to the provisions of
this code relative to trusts and to fraudulent transfers, and the
restrictions imposed by law upon an assignment by special
partnerships, by corporations or by other specified classes of per-
sons; provided, moreover, that such assignment shall not be
valid if it be upon, or contain any trust or condition by which
any creditor is to receive a preference or priority over any
other creditor; but in such case the property of the insolvent
shall become a trust fund to be administered in equity, in the
district court, and shall inure to the benefit of all the creditors
in proportion to their respective claims or demands." Unen-

lightened and uninfluenced by several judicial decisions, some of which it will be necessary to notice hereafter, I think I should understand these provisions,—the one declaring the right of a debtor to prefer particular creditors, and the other regulating the making and declaring the effect of a general as- signment in trust for the benefit of all creditors—to be distinct and independent provisions, either of which was available to a debtor. That two different courses were open to every debtor, he might, as provided in said Section 4654, use any or all his property to pay or secure any creditor in preference to others, or he might, as provided in said Section 4660, turn over all his property to a trustee for the benefit of all his creditors ratably. If he chooses to adopt the former course of paying or securing a preferred creditor, he must keep himself and the transaction within the rules of honesty and good faith as defined by the law. If he adopts the latter course of making a general assign- ment, he must follow the requirements of the statute authoriz- ing and regulating such assignment; and, if in or by such as- signment he undertakes to prefer one creditor to another, the consequence prescribed by such statute will follow. That the question is not one of morals, to be measured by the conscience of the court, but of law, to be tested by the enactments of the legislature.

These views, thus generally expressed, are plainly opposed by the opinion of the territorial supreme court in Straw v. Jenks, 6 Dak. 414, 43 N. W. 941. It is quite probable that the opinion of the learned judge, which was elaborate and instruc- tive, laid down some propositions not necessary to a decision of that case upon the facts presented, and that the law which might perhaps have properly decided that case does not neces- sarily decide this. In that case the mortgagors made several chattel mortgages, at practically the same time, to as many different creditors. They were all immediately placed in the hands of an agent or trustee for enforcement. These acts were all so nearly simultaneous, and so closely related to each other

as to suggest the deliberate intention of the mortgagor to thus create a trust in such agent or trustee for the benefit of such preferred creditors. In the case before us there can be no such element of trust, unless the law itself directly creates it, and that, too, against the express intention of the parties. But the opinion without doubt plainly teaches the doctrine upon which the appellants base their present contention in this case. It is thus stated in the opinion: "Under this statute [4660] whenever an insolvent debtor makes a general disposition of all his property and effects, whether to all or only a part of his creditors, thereby abandoning his business, or putting himself in such situation that it is impossible for him to continue in it, he has made a voluntary assignment." And again: "So long as the instrument employed by the debtor, whatever it may be called, works an absolute transfer of substantially all the property and effects of the insolvent from him to another or others, with a design on his part that it shall do so, and that his connection with the business shall cease, it is a voluntary assignment on his part under the statute in question." It is reasonably plain that if these propositions are adopted and followed as the law by this court, the decision of the circuit court must be reversed; for all the conditions exist which, ruled by such law, would make this conveyance an assignment with preferences. The opinion finds the efficient factor, which turns what would be otherwise a simple transfer of property to one creditor in payment of his debt into an assignment for the benefit of all creditors, in the circumstance that such transfer embraces substantially all the debtor's property—that is, that a debtor may convey nearly all his property to pay his debt to one of his creditors; and it is a proper exercise of his right to prefer such creditor. But if he convey a little more, so as to make substantially all his property, it becomes, instead of a payment as designed, a general assignment for the benefit of all creditors; thus making the character and effect of the transaction to depend—not on the intention of the parties to it, nor the

perversion of such intent, to depend upon the injustice of allowing one creditor to obtain more than his just proportion of the debtor's property; for the apparent injustice of paying a preferred creditor in full with three-quarters of the debtor's property is not relieved by the fact that the remaining one-quarter will pay other creditors an insignificant portion of their claims. I say the ' apparent" injustice of so preferring one creditor to others, for the law recognizes the fact that in the forum of conscience all debts do not stand upon the same level. A man may properly and honestly prefer and pay a friend, who, from pure friendship and a desire to assist, has indorsed for him, rather than one who, for profit, has assumed the business risk of dealing with him. Or he may rightly prefer and pay a poor creditor, who would be distressed by the loss of his debt, to a rich one to whom the loss would be insignificant. In the exercise of the right to prefer creditors, the law has left it with the debtor to determine for himself which he ought to and will prefer. The right so to do being secured by a broad and positive statute, I am unable to see the authority of the court to say that, beyond the use of such a proportion of his property as the court approves, he cannot exercise such right. But for the assignment already noticed, (Section 4660 et seq.) it would not be claimed but that the debtor might use all his property to satisfy one creditor to the exclusion of others. It is not necessary to go to the books for this learning. In Clark v. White, 12 Pet. 200, the court says: "The debtor may prefer one creditor, pay him fully, and exhaust his whole property, leaving nothing for others, equally meritorious." See, also, Wakeman v. Grover, 4 Paige 23; Covenhoven v. Hart, 21 Pa. St. 495; Stewart v. Dunham, 115 U. S. 61, 5 Sup. Ct. 1163; Giddings v. Sears, 115 Mass. 505; Murray v. Cason, 15 Mo. 378.

I am equally unable to perceive what seems to me any sufficient reason for allowing the circumstances that such payment necessitated the discontinuance of the debtor's business to determine or assist in determining that what

was intended to be an absolute conveyance in payment of a particular debt is instead a voluntary assignment in trust to secure the payment, as far as possible, of all debts. There is nothing in the opinion in Straw v. Jenks which would prevent a merchant from turning over a considerable portion of his property to pay a bona fide preferred debt, but this would very often, perhaps generally, compel an abandonment of his business. How little of his property he could retain without such consequences would nearly always depend upon circumstances, such as the disposition of his creditors, the reputation, and often the nerve of the debtor. The result would be that, under conditions and circumstances favorable to the debtor, his conveyance would stand in law as a payment, while, under unfavorable conditions, neither growing out of nor having any connection with the transaction itself nor its necessary effect upon creditors, the same conveyance precisely would stand in law as a general assignment. But how would the same rule—or principle, if it should be so called—apply to the multitude of cases when the debtor is in no business. A debtor has $1,000 in money, or a single piece of property of that value. He owes the same amount to A., $500 to B., and $500 to C. He gives A. all he has in payment of his debt, and continues to work by the day, or on a salary, just as he did before the transaction. Is the transaction a payment to A., or an assignment for the benefit of A., B. and C.? It seems to me, as I have already said, that the two rights of the debtor to use any or all his property to pay preferred creditors, or to turn it all over to a trustee for ratable distribution among all his creditors, are distinct and independent, and that the statute regulating voluntary assignments for the benefit of all creditors did not profess, nor was it intended, to break in upon the long established doctrine of the common law, made statutory in this state, that a debtor may prefer one creditor to another; but was only intended to direct the manner in which an insolvent debtor might if he so desired to treat all alike, convey all his property to a

trustee for a ratable payment to all. The supreme court of Missouri, recognizing that the right of a debtor to prefer creditors might be legally used to · avoid the ratable distribution among all creditors contemplated by the general assignment law, used this significant language: "If the legislature wish to strike at the root of the evil, they must go back to an old principal of the common law, which permits a debtor to prefer one creditor to another." Shapleigh v. Baird, 26 Mo. 326. I find nothing in our assignment law which I think was intended to repeal, affect or qualify Section 4654, giving a debtor the absolute right to prefer creditors, and nothing which restricts the exercise of such right to ·a portion of his property; nor can I find anything in the law which seems to me to authorize or justify a court in holding that a payment so made is not a payment, but a voluntary assignment of the debtor's property for the benefit, not of the creditor whom he has attempted to pay, but of all his creditors. The very definition of an assignment by our statute is a conveyance "of property to one or more assignees in trust." It is then provided "that such an assignment shall not be valid" if it contain any preference among the creditors. Where a conveyance of property is made directly to a creditor in absolute executed payment of a debt, the transaction lacks the essential character of a trust. Burrill, Assignm., § 3; Ingram v. Osborn, 70 Wis. 184, 35 N. W, 304; Dias v. Bouchaud, 10 Paige 445.

It is undeniable that cases may be found which support the opinion in Straw v. Jenks, some of which, and those principally relied upon by appellants, will be noticed. The one nearest home is that of Wyman v. Mathews, in the circuit court and reported in 53 Fed. 678. The case was from this state, and Judge Sanborn, who decided it, was bound to follow the decision of the highest court of the jurisdiction from which it came. The question of the construction and effect of a statute of a state regulating assignments for the benefit of creditors is a question upon which the decisions of the highest court of the

state establishing a rule of property are of controlling authority in the courts of the United States. Brasher v. West, 7 Pet. 615; Allen v. Massey, 17 Wall. 351; Lloyd v. Fulton, 91 U. S. 485; Union Bank of Chicago v. Kansas City Bank, 136 U. S. 235, 10 Sup. Ct. 1013. Judge Sanborn followed Straw v. Jenks. If that case had been decided otherwise, it is fair to suppose he would have felt bound by it. It may be observed, however, that the Wyman case was not one where the property involved had been transferred as payment, but, as in the Straw-Jenks case, it was mortgaged to the bank, not only to secure its own indebtedness, but as a trustee for other creditors. The mortgage thus expressly created a trust, with the bank as trustee. In the Straw-Jenks case the court cites and quotes from Preston v. Spaulding, 120 Ill. 208, 10 N. E. 903, as though supporting its decision. In that case there was a formal assignment for the benefit of creditors, and the whole argument of the opinion rests upon that fact. The preferences were made under such circumstances that the court regarded them as a part of the transaction of assignment, "the same as though incorporated in the deed of assignment itself." In respect to the insolvent debtor, the opinion says: "He may now, as heretofore, in good faith sell his property, mortgage or pledge it to secure a bona fide debt. * * * But when he reaches the point where he is ready and determined to yield the dominion of his property, and makes an assignment for the benefit of his creditors under the statute, this act declares that the effect of such assignment shall be the surrender and conveyance of all his estate not exempt by law to his assignee, rendering void all preferences, and bringing about the distribution of his whole estate equally among his bona fide creditors." And again, the opinion, referring to the voluntary assignment law, says: "No insolvent debtor having in view the disposition of his estate can be permitted to defeat its operation by effecting unequal distribution of his estate by means of an assignment and any other shift or artifice under the forms of law." Concern-

ing this opinion, the later case of Farwell v. Nilsson, 133 Ill. 45, 24 N. E. 74, says: "Aside from the rule that the language of an opinion is to be confined by the facts of the case which the court is considering, it will be found that the learned and discriminating judge who wrote in that case carefully avoided the implication that the preferential transfers by an insolvent debtor, not connected in act and intent with an assignment, were forbidden by the law." And further on the opinion says the judge "had clearly in mind the distinction between an assignment and a transfer of some other form, and clearly recognized the difficulty of treating judgments and conveyances as an assignment, or part of an assignment, and void if preferential, when no assignment was even executed or contemplated by the debtor who gave such preferences." Entirely consistent with these expressions, but not, as it seems to me, with those in the Straw-Jenks case, is the opinion in Schroeder v. Walsh, 120 Ill. 403, 11 N. E. 70. Referring to the statute relating to assignments by debtors for the benefit of their creditors, and prohibiting preferences in such assignments, the court says: "Notwithstanding that statute, a debtor may pay one creditor in full, either in money or by the sale of his property. That act applies only to conveyances of property to an assignee or trustee in trust, to convert the same into money for the benefit of creditors of the assignor, which can now only be made under that law." The effect of the decision as to the question of preferences is thus stated in the headnote: "In the absence of any bankrupt law or statute to the contrary, the law is well settled that a debtor in failing circumstances, not seeking the benefit of the general assignment law, may prefer one creditor to another equally meritorious, if done in good faith. The statute regulating assignments by insolvents has no application to such a case." Again, in Weber v. Mick, another Illinois case, reported in 23 N. E. 646, in which an attempt was made to have certain chattel mortgages securing preferred creditors declared an assignment for the benefit of creditors, the court, through

BAILEY, J., said in reference to an instruction refused by the trial court: "This instruction was doubtless drafted upon the theory that giving a preference to a creditor by means of a chattel mortgage, when the mortgage covers the debtor's entire property, contravenes the provisions of the thirteenth section of the statute in relation to voluntary assignments for the benefit of creditors. To this view we are unable to assent. * * * It must be held that every attempt to apply the act or any of its provisions, by construction, to any subject other than voluntary assignments, must be wholly unavailing." He then proceeds to show that neither chattel mortgages nor transfers of property in payment of debts can be considered as such assignments. Referring to the mortgages he says: "It is clear, upon the principles established by the authorities above cited, that they were mere chattel mortgages, executed for the sole benefit of the mortgagees, and creating no trust in favor of any of the creditors of the mortgagor. It is clear, then, that they did not constitute voluntary assignments for the benefit of creditors within the meaning of the statute."

We have thus referred to these Illinois decisions later than Preston v. Spaulding in order to more safely and intelligently determine what force should be given to White v. Cotzhausen, 129 U. S. 329, 9 Sup. Ct. 309, strongly relied upon both by Judge SPENCER in his opinion in the Straw-Jenks case and by the appellants in this case. In White v. Cotzhausen, which went up from Illinois, it was the evident intention of the United States supreme court to follow the decision in Preston v. Spaulding as an authoritative construction of the Illinois statute and its effect by the highest court of that state. That the opinion of the federal court does not correctly reflect that of the Illinois court is evident. In Union Bank of Chicago v. Kansas City Bank, *supra*, Judge GRAY, who wrote the opinion, says they followed the Illinois court as they understood it. In Farwell v. Nilsson, *supra*, the supreme court of Illinois expressly repudiates the opinion in White v. Cotzhausen as a cor-

rect statement of the law in that state. In Clapp v. Dittman and Perry v. Corby, 21 Fed. 15—cases cited by appellants— Judge BREWER did hold that a transfer of all a debtor's property to a single creditor was an assignment for the benefit of the debtor's creditors, under the statutes of Missouri. He did this, he says in the opinion, against his individual judgment, and in deference to prior decisions of the federal circuit courts assuming to follow the state decisions. Substantially the same rulings will be found in Dahlman v. Jacobs, 16 Fed. 614; Kellog v. Richardson, 19 Fed. 70; Kerbs v. Ewing, 22 Fed. 693; Freund v. Yaegerman, 26 Fed. 812, rehearing refused in 27 Fed. 248; State v. Morse, 27 Fed. 261. Later the question went up from that state to the United States supreme court, and that court, in Union Bank of Chicago v. Kansas City Bank *supra*, reversed and disapproved these cases, and held that the law of that state as declared by the highest court was quite different from that announced by the federal circuit courts; and quoted with approval, as the established law of that state, the following from the opinion in Hargadine v. Henderson, 97 Mo. 375, 11 S. W. 218: "The assignment law of Missouri is not in letter or spirit, a bankrupt or insolvent debtor's act. A debtor, whether solvent or insolvent, may in good faith sell, deliver in payment, mortgage, or pledge the whole or any part of his property for the benefit of one or more of his creditors, to the exclusion of others, even though such transfer may have the effect of delaying them in the collection of their debts. Its terms in no way qualify the rule by which the character of the instrument is to be determined." The court accordingly held that the deed of trust should be considered as a mortgage to secure the creditors named, and not as an assignment for the benefit of creditors generally. The same cases were again referred to and disapproved in the later case of May v. Tenny, (decided in March, 1893,) 13 Sup. Ct. 491. This case went up from Colorado. The circuit court had held, upon the theory contended for by appellants in this case, that an instrument in

the form of a chattel mortgage should be construed to be a general assignment for the benefit of creditors. The decision of the circuit court was reversed, Judge BREWER writing: "This statute [referring to the Colorado assignment law] so far as we are advised, has not been before the supreme court of Colorado for construction; at least not for any question involved in this case. The first section, it will be perceived, gives permission to make a general assignment. There is no compulsion. There is neither in terms nor by implication any duty cast upon an insolvent to dispose of his property by a general assignment, or anything that prevents him from paying or securing one creditor in preference to others;" and he concluded that "a statute which simply permits a debtor to make a certain disposition of his property works no destruction of his otherwise unrestrained dominion over it."

Similar views were expressed in Manning v. Beck, 129 N. Y. 1. 29 N. E. 90. This was an action to set aside a bill of sale made by an insolvent debtor as payment to a preferred creditor and a general assignment executed the next day, on the general ground that they were parts of the same transaction, and, as such, violated the statute by giving such preference. The court held that such a result could not follow, unless the creditor so receiving payment knew at the time that the debtor was about to make a general assignment; and that the bill of sale to him was a part of such transaction, and one of the instrumentalities for the accomplishment of this general surrender of his property; in other words, that such preference is forbidden only when it is made as a part and parcel of an assignment under the statute. The court says: "If the preference were contained in the general assignment itself, we would have no trouble in concluding that it would be unlawful; * * * but it is an entirely different matter where a preference is given by reason of an instrument which the debtor has ordinarily full power to execute and deliver for the very purpose of thereby giving a preference, and which a creditor has like full power

to receive for the purpose of thereby receiving such prefer-
ence." Following this case is the very recent one of Tompkins
v. Hunter, (Sup.) 24 N. Y. Supp. 8, in which the facts are
hardly distinguishable from those in the case now before us for
decision. We quote from the opinion in that case: "But it is
urged on the part of the plaintiffs that no purpose to make a
general assignment or its accomplishment, is essential to bring
the case within the operation of the statute, where the insolv-
ent debtor has by a single transaction disposed of all his prop-
erty to one or a portion only of his creditors, in payment of his
debt or debts owing to him or them, to whom the sale or trans-
fer is so made. The support of that proposition would require
the conclusion that such a transfer of his property for that pur-
pose is in legal effect, a general assignment for the benefit of
creditors within the statute. There is apparently no warrant
for such construction of the statute in the language employed
to express the legislative intent. Nor is it seen how its pur-
pose, so manifested, can be extended to defeat the right of such
debtor to make, and one, or some only, of his creditors to take,
a transfer of his entire property as payment of valid debt or
debts owing by him to such creditor or creditors to whom it is
made, and to hold it for that purpose, as against other credit-
ors of the debtor." In both of these New York cases White v.
Cotzhausen is referred to, but not followed. Cross v. Carstens,
decided by the supreme court of Ohio on June 28, 1892, and re-
ported in 31 N. E. 506, contains a very vigorous discussion of
this question by Spear, C. J., and holds that the assignment
law cannot be so construed as to deprive a debtor of the inde-
pendent right to prefer some creditors to others. Referring to
such law, he says: "The language does not include all trans-
fers nor all conveyances made in contemplation of insolvency,
but assignments; and it is assignments by the failing debtor
in trust to a trustee which the legislature has declared must in-
ure to the benefit of all creditors. * * * Upon no accepted
theory of construction, therefore, are we authorized, in view of

the acknowledged rule of the common law, to enlarge the class and say that it must, by judicial construction, be held to include other instruments not described, instruments which, since our earliest adjudications, have been held to be valid, and entitled to enforcement in accordance with their terms." The length of this opinion forbids further notice of authorities. The following late cases, however, may be cited as entirely consistent with, and generally affirmatively supporting the doctrine of, this opinion: Costello v. Chamberlain, (Neb.) 53 N. W. 1034; C ement v. Johnson, (Iowa) 52 N. W. 502; First National Bank v. North Wisconsin Lumber Co., 41 Ill. App. 383; Warner v. Littlefield, 89 Mich. 329, 50 N. W. 721; Bank of Montreal v. J. E. Potts Salt & Lumber Co., 90 Mich. 345, 51 N. W. 512; Gilbert v. McCorkle, 110 Ind. 215, 11 N. E. 296, followed in Carnahan v. Schwab, 127 Ind. 507, 26 N. E. 67. I believe these later cases, and others that might be cited, as well as many older ones, such as Sampson v. Arnold, 19 Iowa 479; Bank v. Sprague, 20 N. J. Eq. 13; Farwell v. Howard, 26 Iowa 381; Bates v. Coe, 10 Conn. 295; Doremus v. O'Harra, 1 Ohio St. 45; Atkinson v. Tomlinson, Id. 237; Lord v. Fisher, 19 Ind. 7,— teach the only doctrine logically consistent with the several rights and privileges expressly guarantied by statute to a debtor; and that the vital error in the opinion in Straw v. Jenks was in the assumed premise that the design of the statute regulating voluntary assignments was "to prevent preferences among creditors." If such were the design of the legislature, it is inexplicable that they should have left standing upon the statute books the affirmative declaration of the absolute right of any debtor to make such preferences. The assignment law was not intended to effect or touch the general right of a debtor to prefer creditors, but was designed for cases where the debtor professedly did not desire or intend to make preferences, and offers to every debtor who does not wish to handle or distribute his property himself and make preferences, but desires to convey it all to a trustee for a ratable payment to all, a simple and

convenient means to effectuate such purpose; and then provides that a debtor so professing to turn over all his property for the benefit, proportionately, of all his creditors cannot use such assignment to accomplish an inconsistent purpose. He cannot professedly use the law and the assignment for one purpose, but actually use it for another; not because he has no right to prefer particular creditors, but because to do so under such circumstances would be a fraud on the law. He may make a general assignment or not, as he chooses; but if he uses the law at all he must do it in good faith and conform to its terms and requirements. He must "use as not abusing" it. Of course, it is not indispensable that in making such assignment the debtor use the very terms of the statute, but it is indispensable that his acts be such as to indicate his intention to take advantage of, and put himself and his property under the protection of, the statute permitting and regulating a general assignment by a debtor for the benefit of his creditors; and, in my opinion, any judicial construction which, against the debtors will and design, forces his property within the range of the general assignment law, and compels its disposition thereunder would reverse the policy of the law, and make the assignment an involuntary instead of a voluntary one. It would be an attempt upon the part of the court to repeal a statute giving a definite right to a debtor, and to make a new law in the place of that duly enacted by the legislature.

Notwithstanding our great respect for the learning of the late territorial court, and of the able judge who wrote the opinion in Straw v. Jenks, we believe the doctrines of that opinion are wrong, consistent neither with a fair interpretation of the statutes of the state nor with the later and best considered decisions of the courts generally; and, as an attempted rule of property, unsubstantial, and difficult, if not practicably impossible, of execution. We therefore decline to follow it. Applying the principles of this opinion to the facts in this case we have no doubt that the Wenzlaffs took a good title to the

property conveyed to them.  This was the judgment of the trial court, and such judgment is affirmed.