Hon. JAMES BARRETT,
Hon. HOMER E. ROYCE,
Hon. TIMOTHY P. REDFIELD,  } Assistant Judges.
Hon. JONATHAN ROSS,
Hon. H. HENRY POWERS,
Hon. WHEELOCK G. VEAZEY,

---

## FREDERICK W. BALDWIN v. JAMES BUSWELL AND HAZEN MORSE v. HORACE FALES.

*Right of Assignee in Insolvency to Possession of the Debtor's Property Attached on a Debt Contracted before the Passage of the Insolvent Act.*

The State Legislature, while the National Bankrupt Act was in force, passed an act providing for the equal distribution of the estates of insolvent debtors. *Held,* that the state act, although in a degree dormant during the existence of the national act, took such vitality as was not inconsistent with that act, and was not void.

After the repeal of the national act, creditors of an insolvent debtor brought actions against him to recover debts incurred while that act was in force and before the state act was passed, and procured his property to be attached therein. Within sixty days after such attachments were made, the debtor was adjudged insolvent,

Baldwin *v.* Buswell.

and afterwards an assignee was appointed, and the debtor's property was conveyed to the assignee, who demanded it of the attaching officer. *Held,* that as the right to attach was not a part of the contract, but a right to a remedy for the breach of it, the Legislature might provide that in case a debtor had not sufficient property to pay all his debts it should be equitably distributed among all his creditors, without violating that provision of the Constitution that forbids the passing of a law "impairing the obligation of contracts"; and that therefore the assignee was entitled to possession of the property.

*Held,* also, that at the time the state act was passed the creditors had no absolute priority that they could assert by attachment; for that under the National Bankrupt Act, which was in force when the debts were incurred, they would have been bound, in case of bankruptcy of the debtor, to release their attachments and surrender the property for distribution.

THESE two actions were in trover. The first one was by an assignee in insolvency for property of the debtors, taken in attachment by the defendant, a deputy sheriff, on writs issued at suit of various creditors. The defendant pleaded the general issue, and justified under processes. The case was heard by the court, REDFIELD, J., presiding, at the February Term, 1879, Orleans County, on an agreed statement of facts, in substance as follows:

The defendant attached the property in question, on a writ issued at suit of the Barton National Bank, on September 21, 1878, and on writs issued at suit of other parties on the 23d and 24th. The several debts thereby sought to be recovered were incurred and existed prior to November 28, 1876, but the debt due to said bank was evidenced by promissory notes executed by the debtor, after that date but before September 1, 1878. On October 29, 1878, the debtors were adjudged insolvent under the state law, and on January 8, 1879, the plaintiff was appointed assignee. On the 10th, the estate of the insolvent was duly conveyed to the plaintiff, who thereupon demanded the property in question of the defendant. The defendant refused to surrender it, and the plaintiff brought this action therefor. It was agreed that the only question for the court was, whether the attachments were good as against the assignee.

The court rendered judgment, *pro forma,* for the plaintiff; to which the defendant excepted.

The other action was by a constable for property taken from his possession by an assignee in insolvency. The facts were agreed to be as follows:

On December 18 and 19, 1878, the plaintiff took the property in question in attachment, as the property of George H. Crándall, on a writ issued at suit of Isaiah Huntley, to recover a debt that accrued after August 30, 1868, but before November 28, 1876. On January 11, 1879, certain creditors of Crandall instituted proceedings against him, which resulted in an adjudication of insolvency. On February 18, the property of the insolvent was duly conveyed to the defendant, as assignee, and, on February 24, he demanded the property of the plaintiff. The plaintiff claimed to hold it by virtue of said attachment, whereupon the defendant took the property and converted it to his own use. The plaintiff afterwards demanded the property of the defendant, but the defendant claimed to hold it as assignee, and refused to deliver it. The plaintiff thereupon brought this action. The debt was incurred, and both parties resided, in this State.

At the March Term, 1879, Washington County, the court, REDFIELD, J., presiding, rendered judgment *pro forma*, for the plaintiff; to which the defendant excepted.

*L. H. Thompson* and *W. W. Grout*, for the defendant in the first-named cause.

Our insolvency law, having been enacted to take effect while the National Bankrupt Act was in force, was unconstitutional and void. Bump Bank. 259; 1 Kent Com. 389, 391; *Day* v. *Bardwell*, 97 Mass. 246; *Commonwealth* v. *O'Hara*, 6 Am. Law. Reg. N. S. 765; *Van Nostrand* v. *Barr*, 2 N. B. R. 485; *Martin* v. *Berry*, 2 N. B. R. 629, and cases *passim*. Having been unconstitutional at its passage, it was not made otherwise by the repeal of the national act. *Reynolds* v. *Nichols*, 12 Iowa, 398; *Kimball* v. *Rosendale*, 42 Wis. 407, 412, *et seq.*

But at all events, section 43 of the Insolvent Act is unconstitutional, in that it impairs the obligation of contracts existing when the act became operative. Pomeroy Const. Law, 387, *et seq.;* Sedgw. Const. Law, 652, 647, note; Walker Int. Am. Law, 191; *Von Hoffman* v. *Quincy*, 4 Wal. 535; *Walker* v. *Whitehead*, 16 Wal. 314; *White* v. *Crawford*, 84 Pa. St. 433; *Lasly* v. *Phipps*, 13 Am. Law. Reg. N. S. 236, *et seq.;* *Lathrop* v. *Brown*, 10 Am.

Law Reg. N. S. 638, and note; *Edwards* v. *Kearzey*, 6 Reporter, 545, and cases *passim*. If that section is constitutional because it relates to the remedy, section 75 is by parity of reasoning also constitutional; yet it takes away all remedy from the creditors therein enumerated, unless they make themselves parties to the insolvency proceedings. *Clay* v. *Smith*, 3 Pet. 411.

*L. P. Poland*, for the plaintiff.

The question whether a debt contracted before the passage of the Act of 1876, can constitutionally be discharged under its provisions, does not arise. The only question of constitutional law presented is, whether the Legislature of a State may properly provide for an equal distribution of an insolvent's property among all his creditors, though one creditor may have attached. The right is clear. The right to seize the debtor's property in advance of the establishment of a debt by judgment is peculiar to the New England States. It exists wholly at the pleasure of the Legislature, and might be abrogated as to all creditors without cause of legal complaint. The precise question here involved arose in *Bigelow* v. *Pritchard*, 21 Pick. 169, and it was there held that insolvency proceedings dissolved the attachment. That case has been followed in Massachusetts. *Kilborn* v. *Lyman*, 6 Met. 299, *per* DEWEY, J.; *Ward* v. *Proctor*, 7 Met. 318. And see *Reed* v. *Frankfort Bank*, 23 Me. 318.

The debt of the Barton National Bank was contracted after the passage of the act. The notes were the only contract having any legal existence. *Blanchard* v. *Russell*, 13 Mass. 1; *Rindge* v. *Breck*, 10 Cush. 43; *Bangs* v. *Watson*, 9 Gray, 211; *Austin* v. *Caverly*, 10 Met. 332; *Pierce* v. *Eaton*, 11 Gray, 398.

The plaintiff *pro se.*

The effect of the national act is merely to suspend the state law. Ex parte *Eames*, 2 Story, 322; *Baldwin* v. *Hale*, 1 Wal. 228, and cases *passim*.

The insolvency law does not impair the obligation of contracts, but merely affects the remedy. Obligation and remedy are distinct things. The Legislature may modify remedies. *Mason* v.

*Hale,* 12 Wheat. 370 ; *Gray* v. *Munroe,* 1 McLean, 528 ; *Sturges* v. *Crowninshield,* 4 Wheat. 122, 200 ; *Bronson* v. *Kenzie,* 1 How. 311 ; *McCracken* v. *Hayward,* 2 How. 608, and cases *passim.*

*E. F. Palmer,* for the defendant in the other cause.

All property of insolvent debtors in this State is under the control of the Legislature.

The act of 1876 was not retrospective, and therefore could not impair the obligation of contracts. *Larabee* v. *Ovit,* 4 Vt. 45 ; *Curtis* v. *Whitney,* 13 Wal. 68 ; *Mason* v. *Haile,* 12 Wheat. 370 ; *Cardell* v. *Carpenter,* 43 Vt. 84 ; *Alexander* v. *Follet,* 5 N. H. 499 ; *Springfield* v. *Hampden,* 6 Pick. 500 ; *Morse* v. *Goold,* 1 Kernan, 281, 286 ; 1 Kent. Com. 455, and cases *passim.*

The act operates only on remedies, and remedies are under the control of the Legislature to the extent here assumed. 1 Kent. Com. 419 ; *Sturges* v. *Crowninshield,* 4 Wheat. 122, 200 ; *Ogden* v. *Saunders,* 12 Wheat. 213, 284 ; *Morse* v. *Pineo,* 4 Vt. 281 ; *Richardson* v. *Cook,* 37 Vt. 603 ; *Bigelow* v. *Pritchard,* 21 Pick. 169 ; *Morse* v. *Goold, supra,* and cases *passim.*

*W. P. Dillingham,* for the plaintiff.

The Legislature had no power to make the law. The law, therefore, had no existence to begin with, and it was given none by the repeal of the national act. *Sturges* v. *Crowninshield,* 4 Wheat. 122 ; *Ogden* v. *Saunders,* 12 Wheat. 213 ; *Baldwin* v. *Hale,* 1 Wal. 223, and cases *passim.*

But if the Legislature had such power, the act is void as to previously existing contracts, as being in conflict with the constitutional inhibition of legislation impairing the obligation of contracts. *Sturges* v. *Crowninshield, supra ; Farmers and Mechanics' Bank of Pennsylvania* v. *Smith,* 6 Wheat. 131, and cases *passim.*

By the laws of the State existing when the contract was made, the creditor had the right to compel performance by attaching property. The Legislature cannot take away that remedy, without providing another as substantial. *Green* v. *Biddle,* 8 Wheat

1, 17 ; *Bronson* v. *Kenzie*, 1 How. 311, 317 ; *McCracken* v. *Hayward*, 2 How. 608, and cases *passim*.

The Legislature has always used great caution in legislating upon remedies. See Statute of Frauds, the Homestead Act, and the various statutes of exemption.

The opinion of the court was delivered by

REDFIELD, J. These two cases were argued together, and involve the same question. Has the assignee of an insolvent debtor under the Act of 1876, a right to the possession of property of the debtor, as against an attaching creditor ? This act was passed while the national bankrupt law was in force ; and it is claimed that state legislation on this subject was a nullity, because the whole ground had been occupied by an act of Congress. But the courts of last resort long since definitively settled that under the Constitution the national legislation on this subject was not exclusive, and that the state and national legislatures had concurrent jurisdiction. It would seem to follow that state legislation on this subject is valid and operative, except so far as it is supplanted and brought in conflict with the act of Congress ; and so far its functions are suspended but not repealed. *Ogden* v. *Saunders*, 12 Wheat. 213. It is conceded that by that case and numerous decisions of that court since, the several States may lawfully legislate upon this subject, and provide for the distribution of the property of insolvent debtors, and for their discharge upon the surrender of their property. And, if the national legislature enacts a general bankrupt law, it suspends the operation of state laws, so far as they may be incompatible. But it is insisted in these cases that the law of this State was enacted while the National Bankrupt Act was in full operation, and therefore had no subject-matter to which it could apply, and was nugatory and void. If the enactment of a national bankrupt act did not annul the pre-existing insolvent laws of the several States, but left them operative so far as compatible with the national legislation, and suspended so far as in conflict with it, it would seem, by parity of reasoning, a necessary sequence that while the National Bankrupt Act was in force, the state legislature might infuse into an insolvent law such

Baldwin *v.* Buswell.

vitality, though measurably dormant, as was not inconsistent with the act of Congress; and this view is sustained by authority.

We are not called upon to decide that the *discharge* of a debt evidenced by a contract in existence at the time the Insolvent Act of 1876 was passed, under the provisions of that act, would be valid; nor, whether such discharge is forbidden by the Federal Constitution, as "impairing the obligation of contracts." No such question arises in this case. The only question submitted is, whether it is competent for the Legislature to provide that, in case a debtor has not sufficient property to pay all his debts, it shall be equitably distributed to all his creditors. Our attachment law is a method of enforcing payment of a debt; it authorizes a creditor to seize on *mesne* process the property of his alleged debtor, " on suspicion of debt," and hold it to respond a contingent judgment. Its provisions are peculiar to a few New England States, unknown to the common law and to the other States of the Union. It has often been abused and used as an instrument of wrong and oppression, and the alleged debtor has sometimes, after expensive litigation, established that he was not the debtor, but the creditor, and found himself stripped of his property and without redress, as in *Abbott* v. *Kimball*, 19 Vt. 551. Yet, the Legislature has the undoubted right to keep in force laws allowing the seizure of the alleged debtor's property before any debt is established. It has never been questioned, therefore, so far as I know, that the Legislature might, at its pleasure, alter or abolish the attachment law, and provide other methods of appropriating a debtor's property to the payment of his debts. In 1867 our Legislature undertook to modify the attachment law, and provided that when an attachment was made, all other creditors of the same debtor might file their claims and share in the proceeds of the property. This law, in its detail, was so complicated that it soon died out, but its constitutionality was never disputed. Contracts derive their obligation from the act of the parties : when such obligation becomes operative, it cannot be " impaired " by state legislation. But attachments are a part of the *remedies* provided by law to be called into use when contracts are broken. Contracts are inviolable; but the means of enforcement and the methods of redress,

when contracts are broken, are matters of legislation. MARSHALL, C. J., says, in *Ogden* v. *Saunders*, *supra*, " that the obligation of a contract is not identified with the means which government may furnish to enforce it; and that a prohibition to pass any law impairing it, does not imply a prohibition to vary the remedy; nor does a power to vary the remedy imply a power to impair the obligation derived from the act of the parties." It is said that the *lex loci* is a part of the contract. Undoubtedly the legal character and binding force of a contract, are to be determined by the law of the place where the contract is made; but the methods of redress—the legal remedy which a creditor may have in case of a broken contract—are no part of the obligation. The doctrine is tersely stated by THOMPSON, J., in *Ogden* v. *Saunders*, *supra*, quoting from *Harrison* v. *Sterry*, 5 Cranch, 298 : " The law of a place where a contract is made, is, generally speaking, the law of the contract; that is, it is the law by which the contract is expounded. But the right of priority forms no part of the contract itself. It is extrinsic, and is rather a personal privilege, dependent on the laws of the place where the property lies, and where the court sits which decides the cause."

Where by the law of the place of contract, certain species of contracts have prior and superior claims to satisfaction, such as contracts between landlord and tenant, contracts for mechanics' labor, or labor upon public works, or debts evidenced by bonds and specialties, it has been held that such priority and privilege is subject always to modification or repeal, at the pleasure of the legislature, without touching upon this provision of the Federal Constitution. *Stocking* v. *Hunt*, 3 Denio, 274 ; *Morse* v. *Goold*, 1 Kernan, 281, 288 ; *Edwards* v. *Kearzey*, 6 Otto, 595, 610.

In *Bigelow* v. *Pritchard*, 21 Pick. 169, all the points involved in this case were fully considered and decided. This decision is entitled to special force in this State. It involved substantially the same insolvent law; the contract sued, in which the attachment was made, subsisted when the insolvent act was passed; the case was carefully considered, and decided by an able court; and we concur in both the reasoning and the conclusion of the

court. See *Stone* v. *Tibbetts*, 26 Me. 112; *Morse* v. *Goold*, 1 Kernan, 281.

There was no absolute priority which this creditor could rightfully claim by attachment at the time this insolvent act was passed. By the law of the land, at the time the contract was made, the attaching creditor, in case of insolvency, was bound to release his attachment and surrender the property attached to the assignee for just and equal distribution among all the creditors; and this was made so by the paramount legislation of Congress, under the Federal Constitution. The attaching party, therefore, is placed in no worse condition by keeping the bankrupt law substantially in force through State legislation after it has been repealed by Congress. His rights, so far as anything is complained of in this case, were the same at the time the contract was made, as at the time of the attachment. *Kilborn* v. *Lyman*, 6 Met. 299; *Ward* v. *Proctor*, 7 Met. 318.

It is conceded that a law may be in conflict with the Constitution in some of its provisions, and valid in other respects. Whether the Court of Insolvency could *discharge* a debt created by contract having its origin prior to the passage of the act, without full payment, we do not decide, as that question is not raised in the case. My own strong impression is, that such discharge would be invalid. Nor do we determine that all the debts originated in contracts before the passage of the act. My own impression is that the debt of the Barton National Bank had its origin at the date of the note that is sued and upon which the attachment was made. The judgment of the court is, that the attachments must yield to the provisions of the insolvent law and the claims of the assignees under it. Many cases have been pressed upon our attention in which the Supreme Court of the United States have held that the exemption laws of some of the States are invalid as to existing contracts, and unconstitutional. But we think these decisions have little application to the present cases. Such exemption laws substantially forbid all resort to the debtor's property to enforce payment, and thus rendered the debt valueless—they destroyed the contract in essence and value. That court held that the body of the debtor, and a reasonable amount of his property, may be made

exempt, but not all he has and hopes to have. This law forbids the seizure of all a debtor's property by *one* creditor, and compels an equal distribution of the property among all the creditors. It exempts nothing, but declares that equality is " evenhanded justice "; and this, we think, is not forbidden by the Constitution. Such judgments in the respective cases, as is provided by the stipulation of the parties, are to be entered by the clerk.

POWERS, J., dissented.