# CASES

## ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF NORTH DAKOTA

JAMES ELTON *vs.* M. J. O'CONNOR.

Opinion filed May 15th, 1896.

### Insolvency Law—Discharge Feature Void as to Existing Creditors.

A creditor of an insolvent debtor, whose claim accrued before the enactment of the insolvency law under which such debtor is seeking discharge from his debts, may prove his claim and receive his dividends without waiving his right to insist that the discharge feature of such statute is, as to his claim, a law impairing the obligation of his contract in so far as it assumes to discharge his claim without full payment. That such feature of an insolvency law is unconstitutional as to creditors whose claims existed at the time the law was enacted, is well settled.

### Title by Assignment Vests in Assignee as of Date Proceedings Instituted.

But the entire body of such a law is not unconstitutional as to such creditors. So far as such law provides for the transfer of the debtor's property to an assignee, to be distributed among his creditors, it is valid as to all creditors, and therefore no creditor, even though his debt was in existence when the insolvency law was passed, can levy upon such property after the title thereto has vested in the assignee under the terms of the statute. The fact that the levy was made intermediate, the commencement of the insolvency proceedings and the execution of the formal assignment, is immaterial where the statute, as in this state, declares that when the assignment is executed it vests the title in the assignee as of the time when the proceedings were commenced, and annuls all levies between these two dates.

Appeal from District Court, Grand Forks County; *Templeton*, J.

Edwin T. Spafford was adjudged an insolvent and James Elton

N. D. R.—I

became his assignee in insolvency. From an order denying a motion to have certain levies made by M. J. O'Connor, as sheriff, set aside, the assignee appeals.

Reversed.

*Cochrane & Feetham*, for appellant.

At the time of the levy in this case, the title to the property was not in the execution debtor but in the assignee. *Perry Mfg. Co.* v. *Brown*, 2 Woodb. and M. 449, 19 Fed. Cases, 11,015; *Geilinger* v. *Phillippi*, 133 U. S. 246, 10 S. C. Rep. 268. Before the execution levy an adjudication of insolvency had been entered upon the petition of the debtor. The deed of assignment was executed two days after the levy and this deed related back to the commencement of the proceedings. Sections 6036, Rev. Codes. The creditor was not in time to gain the advantage given by the trial court. *Perry Mfg. Co.* v. *Brown*, 19 Fed. Cases, 11,015, *Perry* v. *Smith*, 1 Woodb. and M. 115, Fed Cases, No. 14,115; *Farrens* v. *Hammond*, 10 Fed. Rep. 900; *Judd* v. *Ives*, 4 Metc. 401; *Gallup* v. *Robinson*, 11 Gray 20; *Williams* v. *Merritt*, 103 Mass. 147. The reason that non-residents of the state are not barred by its insolvency discharge is that these laws are local, they are made for the relief of citizens residing within the limits of the state which enacts them and cannot be made to effect the rights of citizens of other states. *Ogden* v. *Saunders*, 6 L. Ed. 659; *Collins* v. *Randolph*, 3 Green, (Ia.) 303, 29 Alb. L. Jr. 188; *Hawley* v. *Hunt*, 27 Ia. 307; *Bedell* v. *Scruton*, 54 Vt. 494. But where the non-resident creditor submits his controversy and contracts to the arbitration of our law and courts by becoming a party to the proceeding he is bound by the decree entered therein. *Gillman* v. *Lockman*, 4 Wall. 409, 18 L. Ed. 432; *Clay* v. *Smith*, 7 L. Ed. 723; *Baldwin* v. *Hall*, 1 Wall. 223, 17 L. Ed. 531; *Baldwin* v. *Bank*, 1 Wall. 234, 17 L. Ed. 534. The contract upon which the execution creditor in this case obtained his judgment was entered into before the passage of the insolvency law, therefore the provisions of our insolvency law as to the discharge of the debt is

void as to this creditor. *Denny* v. *Bennett*, 32 L. Ed. 401, 9 S. C. Rep. 134; *Baldwin* v. *Buswell*, 52 Vt. 65. And because to enforce the discharge feature of this law against prior contracts would be to violate the obligation of such contract, regardless of the residence of the creditor. *Ogden* v. *Saunders*, 6 L. Ed. 606, 12 Wheat. 213; *Roosevelt* v. *Cebra*, 17 Johns. 108; *Matter of Wendell*, 19 Johns. 153; Reno on Non-residents, § 268. The non-resident creditor can come into court and prove his claim, obtain his *pro rata* of assetts, at the same time call the courts attention to the fact that his debt was contracted prior to the passage of the insolvent law and claim and obtain his constitutional privilege of not having his contract discharged. *Talcott* v. *Harris*, 93 N. Y. 567; *Chapman* v. *Forsythe*, 11 L. Ed. 238; Reno on Non-residents, § 268; *Kimberly* v. *Ely*, 6 Pick. 440; *Allen* v. *Roosevelt*, 14 Wend. 100; *Woodbridge* v. *Wright*, 3 Conn. 523; *Embry* v. *Palmer*, 107 U. S. 3; *Montague* v. *Massey*, 76 Va. 397; *Reynolds* v. *Adden*, 136 U. S. 348.

*F. H. McDermont*, for respondent.

The state insolvency law impairs the obligation of a pre-existing contract in that it takes away the remedy for its enforcement. The remedy at the time a contract is made enters into and forms a part of it. *Green* v. *Biddell*, 8 Wheat. 1; *Sturgis* v. *Crowninshield*, 4 Wheat. 122; *Ogden* v. *Saunders*, 12 Wheat. 213; *Bronson* v. *Kinsie*, 1 How. 311: *Von Hoffman* v. *Quincy*, 4 Wall. 535; *Walker* v. *Whitehead*, 16 Wall. 314; *Edwards* v. *Kearsey*, 96; U. S. 595; *Pinney* v. *Pinney*, 4 L. R. A., 348. Section 6085 Rev. Codes provides that all debts *proved* against the estate shall be wholly and absolutely discharged, not all debts contracted subsequent to the taking effect of the law, and proved. *Therefore*, if a claim is *proved* against the estate, it will be discharged as a whole however small a distributive share it may draw. To stay out and not prove, is to be deprived of all remedy or indefinitely stay process. *Deering* v. *Boyle*, 12 Am. Rep. 480; *Aycock* v. *Martin*, 92 Am. Dec. 56; *Coffman* v. *Bank*, 90 Am. Dec. 311. If an

existing creditor participates in insolvency proceedings under a law subsequently enacted, he is bound by its provisions and if he accepts its benefits he must submit to its burdens. *Baldwin* v. *Hale*, 1 Wall. 223; *Gillman* v. *Lockwood*, 4 Wall. 409; *Brown* v. *Smart*, 145 U. S. 454; *Berpee* v. *Sparhacok*, 108 Mass. 111; *Hawley* v. *Hunt*, 1 Am. Rep. 273; *Pratt* v. *Chase*, 44 N. Y. 597; *Sloan* v. *Chiniquy*, 22 Fed. Rep. 213; *Conway* v. *Seamons*, 45 Am. Rep. 579; *Clay* v. *Smith*, 3 Pet. 411; 11 Am. and Eng. Enc. L. 226; *Eustis* v. *Bolles*, 146 Mass. 413; overruling *Kimberly* v. *Ely*, 6 Pick. 440; *Beal* v. *Burchstead*, 10 Cush. 523; *Fisher* v. *Currier*, 7 Metc. 424; *Van Hook* v. *Whitlock*, 7 Paige, Ch. 373.

CORLISS, J. The appeal in this case is from an order sustaining certain levies of execution upon the property of a judgment debtor after the institution of insolvency proceedings. The judgment debtor filed his petition to be adjudged an insolvent under the provisions of Ch. 38 of the Rev. Codes on the 14th day of January, 1896. On the same day he was adjudged an insolvent. Subsequently the necessary steps were taken to carry forward the insolvency proceedings to the point where an assignment could be executed; and on the 5th day of March, 1896, the clerk of the District Court, under the provisions of § 6036, executed to the assignee chosen by the creditors an assignment in due form according to the requirements of that section. Intermediate the inception of the insolvency proceedings and the time of the execution of this assignment, certain creditors, whose claims accrued before the insolvency law went into effect, and who seem to have been non-residents, levied upon the insolvent's property several writs of execution. A motion having been made by the assignee to have these levies set aside on the ground that the property was no longer subject to seizure as the property of the debtor, but had passed to the assignee under the insolvency proceedings, the District Court held that such levies were valid, and therefore denied such motion. From the order denying this motion an appeal has been perfected, and the case is now before

us for review. The position taken by the counsel for the respondent is that the insolvency law is unconstitutional as to claims of the creditors for whom the levies were made, for the reason that they accrued before the law went into effect, and that they are now compelled either to refrain from sharing in the distribution of the assigned estate, or to lose their demands as a result of accepting dividends, and that in this way their situation has been so radically altered to their detriment, as compared with their rights when these contracts were entered into, as to make the statute vulnerable so far as their claims are concerned to the constitutional objection that it impairs the obligation of their contracts. The levies in this case must be treated as having been made after the title to the property had vested in the assignee if the insolvency law is valid as to the creditors in question with respect to all its features save the discharge feature. The statute in terms declares that the assignment, when finally made, "shall relate back to the commencement of the proceedings in insolvency, and by operation of law shall vest the title to all such property, both real and personal, in the assignee, although the same is then held under any process as the property of the debtor." Revised Codes, § 6036. If the creditors in this case secured a valid lien upon the property, they could have secured such lien, as well after the formal execution of the assignment, as before. The date of the transfer of the title is the commencement of the insolvency proceedings, provided they are prosecuted, and not abandoned. The decision in this case necessarily proceeds upon the theory of the invalidity as to the creditors in question of the entire body of the insolvency law. While the writer of this opinion has long regarded as unanswerable the argument of Mr. Webster in *Ogden* v. *Saunders*, against the power of a state to enact insolvency laws authorizing the discharge of debtors from personal liability, yet the law must be deemed to be settled against this view. *Butler* v. *Gorely*, 146 U. S. 303, 13 Sup. Ct. 84, and cases cited. It is true that as to contracts entered into before the enactment of such a statute it is

ineffectual in so far as it attempts to release the debtor without full payment. *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Bank* v. *Smith*, 6 Wheat 131. But with respect to contracts made subsequently to the adoption of the statute in the state in which such insolvency law exists, or which are entered into with reference to such law, the rule now firmly established is that such legislation is valid. *Ogden* v. *Saunders*, 12 Wheat. 213; *Boyle* v. *Zacharie*, 6 Pet. 348; *Butler* v. *Goreley*, 146 U. S. 303, 13 Sup. Ct. 84 and cases cited; *Denny* v. *Bennett*, 128 U. S. 489, 9 Sup. Ct. 134. A creditor who cannot be affected by the discharge in insolvency proceedings, either because his contract was made before the insolvency law was passed, or for the reason that his contract was entered into with reference to the laws of another state, has no right, on that account, to ignore the whole law. He cannot treat the entire act as unconstitutional, and levy upon the property of his debtor after the title has passed to the assignee or trustee in the insolvency proceedings. So far as the law authorizes the creation of a trust, and provides for the transfer of the debtor's title to the trustee, it is a perfectly valid enactment. Indeed it is constitutional even as to the discharge feature it embodies when the rights of creditors whose claims accrued subsequently to the enactment of the law are concerned, provided they were entered into with reference to such law. The utmost scope of the doctrine against the constitutionality of such statutes does not go beyond the limitation of the effect of such discharge to a certain class of creditors. It merely declares that certain other creditors are not affected by it. The law itself, so far as it provides for the transfer of the debtor's property for the benefit of his creditors, is a valid law. The transfer under it divests the title of the debtor to his property, leaving nothing in him subject to seizure under judicial process. The fallacy of the reasoning which leads up to the conclusion that the debtor's property, despite the insolvency proceedings, is still liable to levy on behalf of a particular class of creditors, lies in the postulate that as to such creditors the whole law is void. This proposition is not sound. It is not

supported by either reason or authority. Because the federal
constitution has thrown around every citizen the protection of
his contract rights against impairment by state action, the courts
have built up the doctrine that insolvency proceedings are not
operative to discharge the debt where the effect of such discharge
would be the impairment of the obligation of the contract. But
with the possible exception of cases to be hereafter referred to
there is no hint in any of the cases that the entire body of the
insolvency law is, as to such creditors, utterly void. It is the
discharge feature alone which the federal constitution in such
cases strikes down. The insolvency proceedings go on, as to such
creditors, as though the law contained no provision for a discharge
of the debtor from his debts. As to them, it is as no provision
at all. The supreme law of the land renders it inapplicable to
such creditors. What right, then, have they to complain of the
statute? On what principle can they treat the whole law as void,
and the transfer founded thereon as a nullity? As to their debts,
the law is no more than an ordinary assignment law, embodying
no discharge element whatever. They may appear and secure a
dividend without risk. Creditors are not required in this state,
under our statute, to file releases as a condition precedent to the
right to prove their claims or receive a dividend. Revised Codes,
§ 6053. And when, after a discharge has been granted the debtor,
he relies on it under § 6085 as a defense, such creditors may
always assert against such a plea that the discharge feature of the
statute is inapplicable to their claims. That such creditors do
not, by proving their claims and receiving dividends, waive their
right to insist that the discharge does not embrace their contracts,
must be the law. All creditors are permitted to receive dividends;
and later in the statute is found the section which declares what
effect the discharge shall have. So far as it can be inferred from
this section that a certain class of creditors are within its purview,
it is inoperative. How can it, then, be said that such creditors
have waived their right to insist that the discharge feature of the
law is void as to them, when it is a nullity at the time they accept

their dividend, and they are not required, as a condition of securing such dividend, to release or agree to release their claim, or be bound by this provision, void as to them? The case of *Kimberly* v. *Ely*, 6 Pick. 440; is in point on this question, and sustains our view. The decision in *Talcott* v. *Harris*, 93 N. Y. 567, strongly supports it. See, also, Reno Non-res. § 268 *et seq.* Proceeding from the untenable premise that by receiving a dividend the creditor validates that portion of the act which is a nullity as to him, and then assuming that to exclude him from a share of the assets except on condition of releasing his claim is to impair the obligation of his contract, the argument moves serenely to its conclusion that the whole law is void. This is the inevitable result of the position of the learned District Judge. The court, in *Manufacturing Co.* v. *Brown*, Fed. Cas. No. 11,015, saw this consequence, and predicated on it an argument against the soundness of the view which would thus leave the assigned estate, after the title had vested in the assignee, still subject to seizure by creditors whose claims accrued before the law was passed, or whose contracts were entered into with reference to laws of a jurisdiction other than that in which the insolvency proceedings were pending. Said the court in that case: "If the security is not to be lessened in any way, the principle must be that nothing can be done with an insolvent estate,—no title to it passed within the statute until all non-resident creditors are fully paid. This would be both novel and extraordinary." The court might have placed in this list of creditors who could ignore the insolvency proceedings on this theory those whose claims arose before the law was passed. We are not sure that the proposition that a creditor whose claim accrued before the insolvency law was passed may not be allowed to receive a dividend without losing the balance of his claim (assuming that proposition to be sound) is decisive on the question of the validity of the whole law. It certainly is not clear that a legislature may not provide that creditors whose claims accrued before the law took effect shall not be permitted to receive any portion of the assigned assets.

The debt would not be affected. As to subsequently acquired assets, it could be enforced. It appears to be true, as a general proposition, that the legislature may even, with respect to existing contracts, alter the law touching priority of payment in cases of insolvency proceedings or assignments for the benefit of creditors. Those entitled, at the time their contracts were entered into, to preference in cases of such proceedings or such assignments, may, by subsequent legislative enactment, lawfully be deprived of such preferential right. This doctrine is clearly stated in *Baldwin* v. *Buswell*, 52 Vt. 57-64. "Where by the law of the place of contract certain species of contracts have prior and superior claims to satisfaction, such as contracts between landlord and tenant, contracts for mechanics' labor, or labor upon public works, or debts evidenced by bonds and specialties, it has been held that such priority and privilege is subject always to modification or repeal, at the pleasure of the legislature, without touching upon this provision of the federal constitution. *Stocking* v. *Hunt*, 3 Denio, 274; *Morse* v. *Goold*, 11 N. Y. 281, 288; *Edwards* v. *Kearzey*, 96 U. S. 595, 610." See, also, *Bigelow* v. *Pritchard*, 21 Pick. 169. And it is possible that an insolvency law which in terms prohibits a creditor whose claim arose before the law was passed from receiving a dividend unless he would release his debt might be regarded as not impairing the obligation of his contract. It would seem that the lawmaking power can place a class of creditors at the bottom of a list of preferences notwithstanding the fact that when their claims accrued there was no such provision in the law. The practical effect of such legislation is to leave such creditors without remedy as to the assigned assets unless they are more than sufficient to pay the claims which are preferred. If there is more than sufficient to pay such preferred claims, these creditors, whose rights, as to this particular property, are subordinate to the rights of the other creditors, can secure the balance of the assets, whether they take them from the assignee in the insolvency proceedings, or, being turned back to the debtor, for the reason that such creditors can

claim nothing under the assignment, they take such assets by seizing them as the property of such debtor. It is therefore possible (but we do not decide the point) that we would hold that the fact that creditors whose claims are in existence when an insolvency law is passed are prohibited from sharing at all in the particular property assigned, or can share only on condition of voluntarily releasing their claims, would not necessarily lead to the conclusion that the obligation of their contracts had been impaired.

But, assuming, this to be the law, then we discover a strong, and to our minds a conclusive reason for holding that the effect of receiving a dividend should not operate to discharge the claims of such creditors. If the effect of receiving a dividend is to bar the claim, and if it is repugnant to the federal constitution for the state laws to place the creditor in this situation, where he must either lose all right to resort to the assigned assets or lose his claim, then the inevitable conclusion is that the whole body of every insolvency law, and not merely its discharge feature, is absolutely void as to all such creditors. Nay, it is void as to all creditors whose contracts were entered into subsequently to the passage of the law, but with reference to the laws of another state. Such creditors can no more be bound by the insolvency law than creditors whose claims arose before the law was passed. Such law does not enter into their contracts, they being made with no reference to such law, but solely with a view to the laws of some other state. The result of this doctrine would be that no insolvency proceedings in any state would cut off the right of creditors whose debts were contracted under the laws of another state utterly to disregard the insolvency proceedings, and sweep away from the assignee and the other creditors all of the assigned estate. The consequence would be that one of the primary purposes of such a law—equality of distribution—would seldom, if ever, be attained. Insolvency proceedings would be merely a notice to creditors so situated that they could overthrow the proceedings,—that they could levy upon and absorb all the assets,

leaving the proceedings without value to the other creditors. In fact the result would be that the debtor, by the mere form of filing the petition in insolvency, would secure in many cases a discharge from those debts on which not a dollar of dividend would be paid, although in effect the case would be in no way different from what it would have been had the creditors who levied upon the assets after the insolvency proceedings seized the property without any such proceedings whatever. If it is now the law that the whole body of every insolvency statute is void as to creditors whose claims accrued before it was passed, then this has been the law for more than three-quarters of a century. Is it not singular, if this is the case, that, although thousands of opportunities must, during this time, have presented themselves for creditors so situated to seize the assigned property, and assert the unconstitutionality as to them of the whole of such laws, and the consequent invalidity of the insolvency proceedings founded thereon, yet no such attempt has ever been made? In the whole range of judicial decisions on this subject,—and the adjudications are by meams few,—it has never been suggested by court or counsel that such creditors could ignore the proceedings as void as to them, and seize the assigned property as the property of the debtor. We can see no occasion for a doctrine so extreme. It is not necessary for the protection of the existing creditor, for the reason that the exemption of his claim from the effect of the discharge saves the obligation of his contract from impairment. Is it not called for by any sound principle, for every reason favors the view that the mere receipt of dividends by one whose claim is not within the scope of the discharge feature of the statute, because the federal constitution will not permit it to have such scope, cannot possibly be construed as barring the right of the creditor to enforce the balance of his debt. He does not in terms agree to release his claim, nor is there any valid statute under which it can be discharged. When it is insisted against him that he is presumed to have accepted a dividend in view of the language of the law that his debt will

thereby be discharged, he may well answer that a higher law assured him, when he received such dividend, that it was not in the power of the state to enact such a provision with respect to his claim. It is impossible to spell from the decisions on this subject any other doctrine than this; that existing creditors are not bound by the discharge feature of subsequently enacted insolvency laws. In practically all the cases in which the question has arisen the debtor was seeking to interpose the discharge as a defense. In not one of them has it ever been held that the existing creditor could assail the whole law, and overthrow the insolvency proceedings based on it. In *Baldwin* v. *Buswell*, 52 Vt. 57, the creditor, whose claim accrued before the insolvency law was passed, was in a still more favorable position than the creditors in the case at bar. He had levied on the property before the inception of the insolvency proceedings, and yet the court gave effect, as to him, to the retroactive clause of the insolvency statute vacating levies made within a specified time before the commencement of such proceedings. If an existing creditor who secures a lien before proceedings of that character are begun is yet so much bound by them that they are effective to annul his previous lien, certainly the same rule applies to such a creditor who fails to secure his lien until after the title of the debtor to the property has been divested. It is true that the decision in this Vermont case might have been rested on the single ground that the state insolvency law did not place the creditor in any worse position than the national bankruptcy law which was in force when his contract was made. But the court expressly puts its ruling on that ground also which supports our view of the law, and gives that ground the more prominence in the opinion.

We have thus far proceeded on the theory that the levies sustained by the learned District Judge were made after the inception of the insolvency proceedings. But we would reach no different conclusion if we should assume that the creditors who are claiming the right to enforce their debts out of the assigned

property seized and secured a lien on the property prior to the vesting of the title in the assignee, but within a period of 60 days before such insolvency proceedings were instituted. By the express terms of the statute all levies made under any process are dissolved by insolvency proceedings commenced within 60 days of such levy. Revised Codes, § 6036. No creditor who seizes property of his debtor with such a law on the statute book of the state to whose tribunals he resorts for redress can insist that he has such a vested right in retaining such levy, as against its destruction by subsequent insolvency proceedings, that the annullment of his lien by such proceedings will impair the obligation of his contract. His levy is contingent as to its continued life. The possibilities of its speedy death are before him on the face of the statute when he secures his lien. Such enactments have been universally sustained. Their validity rests upon the control of each sovereignty over all the property within its limits. They relate to the remedy merely, and, while it is true that laws affecting the remedy sometimes work such radical and injurious changes in the rights of creditors as to bring such legislation within the spirit of the article of the federal constitution prohibiting the impairment by the states of the obligation of contracts, yet provisions giving a subsequent assignment for the benefit of creditors, or subsequent insolvency proceedings, a destructive retroactive effect as to liens obtained by judicial process or preferences secured by the voluntary act of the debtor, have never been held to be obnoxious to the mandate of this, the highest law in the nation. Such statutes do not impair the obligation of contract. *Baldwin* v. *Buswell,* 52 Vt. 57; *Bigelow* v. *Pritchard,* 21 Pick. 169. The Federal Supreme Court in a recent case treats the point as settled that such legislation is within competency of the state where the property is situated. In *Brown* v. *Smart,* 145 U. S. 454, 12 Sup. Ct. 959, the court said: "A provision of the insolvency law of a state that all conveyances, by way of preference, of any property within its borders, made by a citizen of the state, being insolvent, and within four months before the

commencement of proceedings in insolvency, shall be void, is a usual and a valid exercise of the power of the state over property within its jurisdiction, as to all such conveyances made after the passage of the law, whether to its own citizens or to citizens of other states." In *Denny* v. *Bennett*, 128 U. S. 489, 9 Sup. Ct. 134, the court sustained a recovery by the assignee for the benefit of creditors against a United States marshal, who, under a warrant of attachment, had seized the debtor's property, for the conversion of the property so seized, although it appeared that the attachment antedated the assignment. The Minnesota statute made the subsequent assignment operative to set aside the attachment. The creditors under whose process the levy was made were non-residents, and by the setting aside of their prior levies they were placed in a position where they were compelled to release their claims as a condition of receiving any portion of the assigned property. Unless they should file such releases, they could not receive any dividend. Said the court in that case: "The act in question in the present case does not exceed many of the class to which we have alluded in its effect in enabling the debtor to dispose of his property without regard to the ordinary judicial proceedings to subject it to forced sale. The power is conceded, when not forbidden by the statutes of a state, to a failing debtor to make a general assignment of his property for the benefit of his creditors, as this one does. It is further admitted that in such an assignment, if there be nothing fraudulent otherwise, he can prefer some creditors over others, and that he can secure to some payment in full while he leaves others who will certainly get nothing out of his estate. When this is done, the creditors who are not provided for in the assignment are left in a worse condition than they are where it is done under the present law, because, in the first instance, they would certainly get nothing out of the debtor's property, though they would retain a right to proceed against him by a judgment and execution, while in the present case they have the option of pursuing that course, or of coming in with the other creditors, executing releases, and

obtaining their share of the property assigned. Here, instead
of naming the preferred creditors, the assignor gives his prop-
erty to all who will execute a release of their claim against
him. Nobody is required by the statute to do so unless he thinks
it is to his interest. The creditor who executes such a release
gets his share of the property assigned, while the one who does
not, receives nothing, unless there may be a surplus left after the
payment of the releasors, but he is not hindered or delayed in
obtaining a judgment against the debtor, or in levying upon any
other property, if such can be found, not conveyed by the instru-
ment, or upon any afterwards acquired by the debtor. The latter
remains liable, notwithstanding this statute, and this assignment,
as he always was, for the debt of the non-assenting creditor. It
is not easy, then, to see how this statute can be more complained
of as impairing the obligation of contracts than the statutes of
exemption which we have already mentioned, and the principles
which lie at the foundation of all voluntary assignments for the
benefit of creditors with preferences that exhaust the fund
assigned." This case is in point, except as to the feature of the
existence of the contract at the time of the enacting of the statute.
The insolvency law appears to have been enacted before the con-
tract was entered into on which the suit was brought. But in our
opinion, this difference between the cases is of no importance.
If the fact that at the time a debt is incurred there is no law in
force authorizing a creditor to assign with preference, or assign
so as to prevent the creditor from sharing in the assigned estate
as a condition of securing any portion of the assets to apply on
his claim, vests in him a right to overthrow such law, when subse-
quently passed, as a law impairing the obligation of his contract,
this doctrine must rest upon the ground that the contract was
not made with reference to the new statute, but with reference
to the existing law, and that to change this law is to impair the
obligation of the creditor's contract. Such a doctrine proves too
much. It would put it beyond the power of every state to pass
such statutes, even as to future contracts made and to be preferred

in another state. Such contracts are never entered into with reference to the assignment or insolvency laws of some other states. So far as we can discover from the case of *Denny* v. *Bennett*, the inference that the contract was made in another state is stronger than the inference that it was made in Minnesota, the creditors being non-residents. This decision may, therefore, be fairly regarded as opposed to any distinction based on the fact that the creditor did not contract with reference to the insolvency law under which his prior levy is set aside. The court, however, did not pass upon the point as to the right of a state, in this case, to enact such a provision with respect to existing contracts. But on that point we have no doubt. Such enactments are in the interest of equality of payment, and no citizen can insist that he has a constitutional right by superior diligence to absorb perhaps all the assets of his debtor the prejudice of other creditors whose demands are equally meritorious, merely because the law was in this condition when his debt was contracted. Aside from the obvious justice of legislation preventing the securing of priority by the first seizure of property, it has a still deeper foundation in public policy. It removes the temptation to spring upon the debtor with judicial process at the first scent of danger by taking away the advantage of priority. A creditor whose claim accrues before the passage of an insolvency law cannot complain of such a feature in it. He must pursue his remedy subject to the laws of the state in which he sues. Nor does he suffer any great detriment—if, indeed, it can be called a detriment at all—than that which other creditors suffer in common with him. And his vantage ground, from which he may treat as void the discharge provision of the law, remains, despite his receipt of dividends, firm under his feet. Nor can it with reason be urged that the fact of the non-residence of the creditors in this case in any manner affect the decision which should be rendered. It is true that if, as to such creditors, a prior levy is set aside by subsequent insolvency proceedings, and thereafter, to secure a portion of the assigned estate, they accept dividends, they will, by the receipt

of such dividends, submit themselves to the jurisdiction of the court in which the insolvency proceedings are pending, so that the discharge will bind them if their contracts are subject to the provisions of the law; and it is also true that if they do not appear they will not receive any portion of the assigned estate. But the sole right enjoyed by a non-resident creditor, if his claim is one which the insolvency proceedings would, but for such non-residence, discharge, is to be exempt from the effect of such proceedings so long as he does not appear therein. It cannot be that he is injured by reason of the setting aside of his prior levy by the insolvency proceedings, for such legislation is within the conceded power of the state. Nor can he complain that the obligation of his contract has been impaired by the fact that he cannot receive a dividend without vesting jurisdiction over his person and his demand in the court in which the insolvency proceedings are carried on, and so make operative· against his claim the discharge therein granted. The argument seems to be that, while the legislature may, as to non-resident as well as to resident creditors, declare that insolvency proceedings instituted within a specified period after prior levies or preferences shall set aside such prior levies or preferences; and while a non-resident creditor cannot, if his claim was legally within the discharge feature of the law, receive a dividend without releasing his debt, yet that lawfully to take away his prior levy, and lawfully to present to him the alternative of accepting a dividend on condition of losing the balance of his demand, or of preserving his debt at the cost of receiving no dividend at all, is in some mysterious way the impairment of the obligation of his contract. How it can be said that to apply to his case well settled legal doctrines works a a destruction of his constitutional rights, is beyond our comprehension.

Counsel insists that the case of *Kimberly* v. *Ely*, 6 Pick. 440, has been overruled by the decision in *Eustis* v. *Bolles*, 146 Mass. 413, 16 N. E. Rep. 286. The language of the court in the Eustis

case does not warrant this broad statement. The court merely declared that the Kimberly case was in conflict with the later decisions so far as it upheld the doctrine that a foreign creditor who voluntarily proves his debt and receives a dividend in insolvency proceedings is not barred by the discharge. But in the Kimberly case there was the additional element that the claim accrued before the passage of the insolvency law. To that extent the Kimberly case is not overruled, and an examination of the Kimberly case will disclose the fact that the court in deciding it ignored the element of non-residence, and placed the determination solely on the ground that the claim was in existence when the statute was enacted. The court in the Eustis case uttered some *dicta* which seemed to favor the respondent. But it is obvious that the court in that case proceeds on a theory which cannot be supported. It assimilates the case of an existing claim to that of a claim held by a non-resident. It asserts that "a similar question was decided in *Clay* v. *Smith*, 3 Pet. 411, where it was held that the plaintiff, by proving his debt, and taking a dividend under the bankrupt laws of Louisiana, waived his right to object that the law did not apply to his debt, he being a creditor residing in another state." But in such a case the discharge feature is not unconstitutional, and hence void as to the creditor, if his debt is one which would be discharged, if he were a resident. The exemption from the effect of the discharge feature of the law rests, in such a case, upon the want of jurisdiction of the court in which the insolvency proceedings are pending over the creditor and his claim. If he appears in the proceedings, and accepts a dividend, of course he confers jurisdiction on the court, and renders binding upon him the decree of discharge subsequently rendered. It is indispensable in these cases to keep in mind a fundamental distinction between cases of mere non-residence of the creditor and those which belong to that class as to which the discharge feature of an insolvency law is void. Where the creditor is a non-resident, the courts can have no jurisdiction over his claim unless he voluntarily submits it to the

jurisdiction of the court. For the purpose of testing the power of the court over it in such proceedings, it is deemed to have its *situs* at the domicile of the creditor. This is, indeed, the general rule, and only gives way to the contrary doctrine in exceptional cases, such as cases in which the *situs* of a debt is fixed at the debtor's domicile for the purposes of founding administration of decedent's estates, or for purposes of seizure under judicial process. But, as against insolvency proceedings, the creditor has the right to insist that his claim has its *situs*, not where the insolvency proceedings were carried on,—the state of the debtor's domicile,—but in the jurisdiction where he (the creditor) lives. For this reason it has been repeatedly held by the Federal Supreme Court that as to non-resident creditors who do not appear in the proceedings the discharge is of no affect. *Gilman* v. *Lockwood*, 4 Wall. 409; *Suydam* v. *Broadnax*, 14 Pet. 67; *Cook* v. *Moffat*, 5 How. 295; *Baldwin·*v. *Hale*, 1 Wall. 223. The reasoning of the Federal Supreme Court shows that that court has always placed the exemption of non-residents solely on the ground of want of jurisdiction, and jurisdiction of course, can always be conferred by the voluntary appearance of the creditor. That he does so appear when he proves his claim and receives a dividend cannot admit of doubt. In *Suydam.* v. *Broadnax*, 14 Pet. 67, the court say, at page 75: "Every bankrupt or insolvent system in the world must partake of the character of a judicial investigation. Parties whose rights are affected are entitled to a hearing. Hence any bankrupt or insolvent system professes to summon the creditors before some tribunal, to show cause against granting a discharge to the bankrupt. But on what principle can a citizen of another state be forced into the courts of a state for this investigation? The judgment to be passed is to postrate his rights, and on the subject of those rights the constitution exempts him from the jurisdiction of the state tribunals, without regard to the place where the contract may originate. In *Ogden* v. *Saunders*, 12 Wheat. 213: 'A bankrupt or insolvent law of any state, which discharges both the person of the debtor and his future acquisi-

tions of property is not a law impairing the obligation of contracts, so far as respects debts contracted subsequently to the passage of the law. But a certificate of discharge cannot be pleaded in bar of an action brought by a citizen of another state in the courts of the United States, or of any other state than that where the discharge was obtained.' Though this is a statute intended to act upon the distribution of insolvent estates, and not a statute of bankruptcy, whatever exemption it may give from suit to an executor or administrator of an insolvent estate against the citizens of Alabama, a citizen of another state, being a creditor of the testator or intestate, cannot be acted upon by any proceedings under the statute, unless he shall have voluntarily made himself a party in them, so as to impair his constitutional and legal right to sue an executor or administrator in the Circuit Court of the United States." But those creditors whose contracts are not made with presumed reference to an insolvency law stand without its purview, and occupy the same position with respect to it that they would have occupied had they in terms been exempted from the operation of its discharge feature. The dictum in the Eustis Case, 146 Mass. 413, 16 N. E. Rep. 286, is therefore without weight, because of the fact that the court bases it upon the conceded effect of the receipt of a dividend by a non-resident creditor. No logical deduction can be made from the premise that such a creditor, by receiving a dividend, becomes bound by the discharge thereafter granted, that therefore a creditor as to whose claim the discharge feature is a mere nullity is also bound by the discharge when he likewise accepts a dividend. But the court in that case bases its dictum on just such a deduction. To us it is unsound. The same mistake lies at the foundation of the decision in *Van Hook* v. *Whitlock*, 7 Paige, 373. The court builds up its decision on the same case of *Clay* v. *Smith*, 3 Pet. 411. The true ground for the decision in the Eustis case is that it appeared that the creditor who was seeking to recover was not merely essaying to avoid the force of a discharge decree in insolvency proceedings, but the legal effect, under settled principles of law,

of his own release of his claim by becoming a party to a compo-
sition agreement under the very terms of which he agreed to
discharge the obligation of his debtor on receipt of one-half of
his debt.   It is obvious that it is on this ground that the decision
of the court in that case rests.   Said the court:  "He proved his
debt in insolvency, and voted for assignee; but this he had a
right to do, as the proceedings were commenced under the Public
Statutes, and, if they had been pursued according to these
statutes, his debt would have been discharged, and he would have
been entitled to his share of the debtor's property.   After the
composition was proposed, at a hearing thereon on March 10,
1887, he objected to it, on the ground that the composition
statutes were unconstitutional and void as to his debts.   So far
it is clear that there was no waiver of his rights.   But it further
appears that on May 14, 1887, the plaintiff received the sum of
$8,020, being fifty cents on the dollar of his claim, and gave a
receipt reciting that it was 'according to the composition con-
firmed by the court in the case,' being like the receipts signed by
all the other creditors.   He thus voluntarily received all the
benefits and fruits of the composition.   We think that when the
composition was confirmed he was put to his election whether he
would avail himself of the composition offer, or would reject it,
and rely upon his right to enforce his debt against the debtors
notwithstanding their discharge.   The offer was to pay him fifty
per cent., not in part payment of his debt, but in full discharge of
it.   The offer may be an amount larger than could be realized
from the debtor's assets if administered in insolvency.   The
statute contemplates that the money offered may be, and it often
is, in fact, paid into court by the debtor's friends, and in such case
it is paid over to the person who deposited it, if not called for
within a year by any of the creditors.   It is clearly a violation of
the whole purpose and spirit of the composition for any creditor
of the insolvent to draw out his share of the money, and apply it
in part payment of his debt, holding the insolvent liable for the
balance.   It is unjust to the person who deposited the money.

As the plaintiff saw fit to accept the offer, he thus made himself a party to the composition, and such acceptance was inconsistent with the right to enforce the balance of his debt, in violation of the terms of the composition. We are of opinion that he has waived his right to object that the discharge is invalid as to him."

The facts before the court in the Eustis case did not call for any decision on the question on which the court incidentally touched in the case. While the claim sued on accrued before the new feature of the insolvency law under which the composition proceedings were held went into effect, yet there was an insolvency law in force when such debt was created; and the new law did not alter the position of the creditor to his detriment. Under the old law the debtor had the absolute right to a discharge on paying a dividend of fifty per cent. without the consent of a single one of his creditors, or on paying less than fifty per cent. provided a majority in number and value of his creditors would assent in writing to his discharge. Under the new provision of the law, which was merely a composition feature incorporated in the old act, and of which the debtor might or might not, at his own pleasure, avail himself, he, the debtor, could file a written proposal for composition with his creditors, setting forth the amount he offered. But under this proceeding the discharge could not be obtained so easily by the debtor as under the old act, for he could not secure discharge merely on paying a dividend of fifty per cent., but only in the event of his securing the written consent of a majority in number and value of his creditors, and in the event of his offering less than fifty per cent. he must obtain the written assent of three-fourths in number and value of such creditors. The court in that case did not decide, but merely assumed, that the new feature of the law should, as to creditors whose claims accrued under the old law, but before the adoption of such new feature, be treated as a law impairing the obligation of their contracts. Said the court: "We assume, in favor of the plaintiff, that the composition statutes above cited, as they undertake to discharge debts due to creditors

upon conditions materially different from those existing prior to the time of their passage, are as to such prior creditors unconstitutional, as impairing the obligation of their contracts. But they are not wholly unconstitutional and void. They are clearly valid as to all debts between citizens of the state which accrue after the statutes went into effect; and a prior creditor, if he elects to avail himself of the composition proceedings, and to accept their benefits, may waive his right to object that they are invalid as to his debt. The principal question in this case is whether the plaintiff has thus waived his rights."

The decisions relating to fiduciary debts under the federal bankruptcy law are not in point. See, as recognizing the doctrine that by accepting a dividend a creditor holding a fiduciary claim waives his privilege. *Morse* v. *City of Lowell*, 7 Metc. (Mass.) 152; *Fisher* v. *Currier, Id.* 424; *Gilbert* v. *Hebard*, 8 Metc. (Mass.) 129-132; *Chapman* v. *Forsyth*, 2 How. 202. It is apparent from the decision in the case of *Chapman* v. *Forsyth* that these debts were not within the bankruptcy law at all, and were not provable under it, except on condition of waiving the claim that they were privileged. The court construed the statute as exempting creditors holding such claims from the effect of a discharge in bankruptcy proceedings only on condition that they did not participate in such proceedings. They were given the privilege of not being bound by the proceedings, but this was conditional on their not participating therein by the proof of their claims and the receipt of dividends. When one who holds a claim that is not provable, if he intends to insist that it cannot be discharged by the proceedings, does in fact prove it, and accept a dividend on it, he has by that act placed his claim in the list of provable claims as to which the discharge is a bar, and is estopped from showing the contrary. But there is no provision in our statute which declares that antecedent claims are not provable. On the contrary, such debts are provable. When it is subsequently urged that by making such proof the creditor has assented to the statute which declares that the discharge shall operate upon all

claims actually proved, he can logically reply that such a proviso
is unconstitutional as to his demand, and therefore, with respect
thereto, is no law at all for any purpose; that he has not assented
to the terms of the statute because as to him there is no such
statute.   The language of Justice Miller in *Denny* v. *Bennett*, 128
U. S. 489, 9 Sup. Ct. Rep. 134, on which the learned District Judge
rested in part his decision, is only obiter, and does not even
express the individual views of that distinguished jurist.   He
merely says that it may be conceded that, so far as an attempt might
be made to apply the insolvency statute in question to contracts in
existence before it was enacted, it would be liable to the objection
that it impaired the obligation of such contracts.   But he does
not assert that this is his opinion, or the opinion of the court.
Nor does he, in terms, state that even this concession embraces
the invalidity of the whole law.   In *Sloane* v. *Chiniquy*. 22  Fed.
213, it is claimed that the same justice sitting at circuit used
language which supports the decision herein.   Whatever is said
in that case was purely obiter, and, moreover, it is apparent that
the  court  did  not  carefully  consider  the  question,  but  merely
assumed that possibly the whole law might be invalid.   Indeed,
it is by no means clear that that eminent jurist intended to go
further than assert the invalidity of that portion of the law
requiring  creditors  to  file  releases  as  a  condition  of  securing
dividends, so far as it related to creditors whose claims arose
before the law was passed.   In *Manufacturing Co.* v. *Brown*, Fed.
Cas. No. 11,015, it appeared that the attaching creditor held a
claim arising out of a contract governed by the laws of a state
other than that of the insolvency proceedings, it being a contract
to be performed in another state, and yet, so far from holding
that the insolvency proceedings were a nullity as to him, they
were adjudged to be valid; and it was held that he secured no lien
on the assigned assets by his levy after the inception of the
insolvency proceedings.   We hold that the court erred in ruling
that the levies were valid as against the insolvency proceedings.
The court should have granted the order applied for requiring

the sheriff to turn over the property levied on to the assignee.

The order is therefore reversed, and the District Court will enter an order in conformity with this opinion. All concur.

(68 N. W. Rep. 84 )

Note—Where an insolvent made an assignment for creditors, but failed to file with the inventory an affidavit that the same was in all respects just and true as required by § 4668, Comp. Laws, no title vested in the assignee. *Farmer* v. *Cobban,* 4 Dak. 425. Words of similar import with those in the statute may be used. *Landauer* v. *Conklin,* 3 S. D. 462. Sections 4667-46-68, Comp. Laws, requiring an inventory and affidavit to be attached and filed are mandatory, and the doing of such acts are essential to the validity of the assignment. *Landauer* v. *Conklin,* 3 S. D. 462. An assignment must be acknowledged and recorded, else it is void as to non-assenting creditors. *Cannon* v. *Deming,* 3 S. D. 421. Contract construed as ordinary contracts with same presumptions of good faith. *Landauer* v. *Conklin,* 3 S. D. 462. An attachment of property in the hands of an assignee, prior to the filing of the inventory and affidavit required by statute is not premature, but may be. defeated by a compliance with the provisions of the statute within the 20 days limited. *Farmer* v. *Cobban,* 4 Dak. 425. Where an insolvent firm gave some of its creditors mortgages upon its entire stock in trade, all the mortgages being executed within a few minutes of each other and their amount far in excess of the value of the goods, and permitted the mortgagors to take immediate possession of the property; *held,* that the transaction constituted an assignment with preferences and was prohibited by § 4660, Comp. Laws. *Straw* v. *Jenks,* 6 Dak. 414, (43 N. W. Rep. 941.) But this case has been overruled. *Cutter* v. *Pollock,* 4 N. D. 205, (59 N. W. Rep. 1062;) *Sandwich Mfg. Co.* v. *Max,* 5 S. D. 125, (58 N. W. Rep. 14.) An insolvent debtor may pay or secure one creditor in preference to another except in cases where he executes an assignment for the benefit of his creditors. *Cutter* v. *Pollock,* 4 N. D. 205. A debtor may use his property to pay preferred creditors or he may make a general assigment as he chooses. *Sandwich Mfg. Co.* v. *Max,* 5 S. D. 125. If he attempts to assign under the statute he can make no preferences, 5 S. D. 125. An assignment under the provisions of § 4660, Comp. Laws, does not place the property in *custodia legis. Enderlin Bank* v. *Rose,* 4 N. D. 319. Question not decided in South Dakota. *Wright* v. *Lee,* 5 S. D. 237. A general assignment of all the debtors property "except such property only as is exempt by law from attachment and execution" is not fraudulent in law. *Red River Valley Bank* v. *Freeman,* 1 N. D. 196; *Bangs* v. *Fadden,* 5 N. D. 92. In the absence of actual fraud attachment will not lie against an assignor for the reason that in making an assignment he reserves all property exempt from execution. *Bank* v. *Freeman,* 1 N. D. 196. District Courts have inherent jurisdiction over the subject matter of trusts and will on proper application put forth their equity powers to aid the administration of the trust. *Bank* v. *Freeman,* 1 N. D. 196. Deed of assignment construed and *held* not to require creditors to file releases as a condition to securing benefits thereunder. *Bangs* v. *Fadden,* 5 N. D. 92. A conveyance made by a husband to his wife cannot be regarded as a general assignment for creditors when the record fails to show insolvency of the husband and the property conveyed did not constitute substantially all the grantors property. *Williams* v. *Harris,* 4 S. D. 22. In assignment by a corporation the secretary may verify the inventory. *Wright* v. *Lee,* 4 S. D. 237, or the

president, *Wright* v. *Lee*, 2 S. D. 597. An assignment must be in good faith and it is subject to the code provisions relative to trusts and fraudulent transfers. 4 S. D. 237; 2 S. D. 597. It is not necessary that the inventory required by § 4668, Comp. Laws, recite upon its face that it is a full and true inventory, if the fact is otherwise made to appear. 3 S. D. 462. An instrument that does not purport to be made by an insolvent debtor and to convey all the debtors property not by law exempt does not constitute an assignment. *Sandmeyer* v. *Dak. F. & M. Ins. Co.*, 2 S. D. 346. An assignment which conveys to the assignee the absolute legal and equitable title to the assigned property charged with a trust for the payment of all or certain designated debts of the debtor constitutes the assignee the trustee of an express trust who is authorized to bring suit in his own name by § 4872, Comp. Laws. *Sandmeyer* v. *Dak. F. & M. Ins. Co.*, 2 S. D. 346. A creditor can contest the validity of an assignment on the ground that it never was authorized by a duly elected board of directors. *Wright* v. *Lee*, 2 S. D. 596. A foreign corporation may make a valid assignment for creditors and the directors are qualified to make the assignment without first obtaining the sanction of the stockholders, *Wright* v. *Lee*, 2 S. D. 597. Where the assignees report and admisssions show gross irregularities, his removal by the court without notice was not reversed. *King* v. *McClurg*, 63 N. W. Rep. 219. An assignor for creditors may move to vacate an attachment issued before the assignment. *Tobertson* v. *Casperson*, 63 N. W. Rep. 908. The insolvent law discussed in the courts opinion, *Elton* v. *O'Connor*, *supra*, became a law January 2nd, 1896.